## State of Connecticut *v.* Willie Carter
## (6866)

Dupont, C. J., Daly and Norcott, Js.

Argued April 4—decision released June 26, 1990

*Sue L. Wise,* with whom, on the brief, was *John R. Williams,* for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

Norcott, J. After a jury trial, the defendant appeals from his judgment of conviction of illegal possession of a narcotic substance in violation of General Statutes § 21a-279. The defendant claims that the trial court

should have considered his motion to suppress based upon its ruling that he lacked standing to assert a fourth amendment challenge to the search of the apartment from which the evidence was seized. We reverse the trial court's judgment.

After the defendant filed a motion to suppress, the state argued that the defendant lacked standing to challenge the search of Helen Boykin's apartment. At the suppression hearing, the following evidence was adduced. On April 29, 1987, New Haven police executed a search warrant at the second floor apartment of 191-193 Davenport Avenue. The police knocked on the door and identified themselves. After receiving no response, they forcibly entered the apartment.

From the living room, one of the officers saw the defendant and the female tenant of the apartment, Boykin, in the bedroom. They were sitting on the bed together, partially clothed. The officers secured the living room and then moved into the bedroom, where one of the officers observed the defendant throw a white, rock-like substance into the bed sheets. Once the entire apartment was secured, the officers retrieved the substance, which tested positive for cocaine.

According to the defendant, he had met Boykin two to three months before the search. They began dating at that time and became involved in an intimate relationship. The defendant maintained his primary residence with his mother at the family home, but he spent two to three nights a week with Boykin at her apartment.

The defendant did not have a key to Boykin's apartment. In order to gain entry, he would knock and identify himself, and someone would let him in.[1] He did not

[1] The defendant testified several times that he did not possess a key. He also testified, however, on cross-examination, that Helen Boykin had given him a key, but he left it at his home and never used it. He stated that he, therefore, did not have a key.

have access to the apartment if Boykin was not at home. If nobody was at home when he arrived, he would wait for a short time, and if someone did not return, he would leave.

The defendant claimed that he provided money to Boykin to help pay the rent and other household expenses, but he also testified that the money was "borrowed." The defendant kept personal belongings in the apartment, but he also told the police executing the warrant that he was a "social guest."

On the day of the search, the defendant arrived at the apartment in the early morning hours, approximately 7 a.m. He had last been at the apartment several days earlier and had not been back because he and Boykin had quarrelled. When he arrived, he knocked and identified himself, and the babysitter let him in and told him that Boykin was asleep in her bedroom.

The defendant entered the bedroom, undressed, and got into bed with Boykin. When the defendant and Boykin awoke, they talked, made up, and stayed in bed for most of the day. At about 5 p.m. that afternoon, the police entered to execute their warrant.

On the basis of this evidence, the trial court found the following facts: (1) the defendant did not rent the premises; (2) the defendant did not have or use a key to enter the apartment, but was admitted by the babysitter; (3) his visits were sparse and limited in time; (4) his relationship with Boykin began two months before the search; (5) Boykin and the defendant were estranged before the day of the search; (6) the defendant's primary residence was with his mother; (7) there was no door to the bedroom where the drugs were seized; (8) he exercised no apparent control over the premises; (9) the defendant was not named in the warrant; and (10) he was never seen entering or exiting

the building during surveillances or pass-bys. The trial court also found that the defendant's testimony was not credible on certain key points. On the basis of these findings, the trial court concluded that the defendant did not have a reasonable expectation of privacy in Boykin's apartment.

" 'A person is entitled to fourth amendment protection anywhere he resides where he has a reasonable expectation of privacy. . . . A person 'who resides at a private residence with permission of the [lessee] as a guest or invitee may demonstrate an expectation of privacy in the premises legally sufficient to support a challenge to a police search.' . . .'' (Citations omitted.) *State* v. *Reddick,* 207 Conn. 323, 329–30, 541 A.2d 1209 (1988).

"The defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing. *State* v. *McLucas,* 172 Conn. 542, 546, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977). Critical to this standing determination is the defendant's showing that he possessed a legitimate expectation of privacy in the premises to be searched . . . .'' *State* v. *Callari,* 194 Conn. 18, 23, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985); see also *State* v. *Harris,* 10 Conn. App. 217, 224, 522 A.2d 323 (1987); *State* v. *Cardona,* 6 Conn. App. 124, 133, 504 A.2d 1061 (1986). "Whether a reasonable expectation of privacy exists is a determination made on a case-by-case basis. . . . That determination entails a two-part inquiry: first, whether the individual has exhibited an actual subjective expectation of privacy, and second, whether that expectation is one society recognizes as reasonable.'' (Citations omitted.) *State* v. *Reddick,* supra, 331; *State* v. *Kennedy,* 20 Conn. App. 354, 359, 567 A.2d 841 (1989). Ownership is not a prerequisite to fourth amend-

ment protections; *State* v. *Daay,* 5 Conn. App. 496, 499, 500 A.2d 248 (1985); but the defendant *must* show a reasonable expectation of privacy. Id.

In reviewing this claim, this court must take the facts found by the trial court unless those facts are clearly erroneous. *State* v. *Perry,* 195 Conn. 505, 516, 488 A.2d 1256 (1985); *State* v. *Janice,* 20 Conn. App. 212, 216, 565 A.2d 553 (1989); *State* v. *Marsala,* 19 Conn. App. 478, 481, 563 A.2d 730, cert. granted, 213 Conn. 805, 567 A.2d 836 (1989). "This court cannot retry the facts or reconsider the credibility of witnesses." *State* v. *Janice,* supra; *State* v. *Perry,* supra. We conclude that the trial court could have reasonably found the facts as it did. We further conclude that the trial court incorrectly concluded that the defendant did not have a reasonable expectation of privacy in Boykin's apartment.

The defendant was clearly more than a transient houseguest, and he was present in Boykin's apartment with her permission at the time of the police entry. That status alone is enough to establish that he had an expectation of privacy in the apartment that society is prepared to recognize as reasonable. See *Minnesota* v. *Olson,* 495 U.S.      , 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990).

In *Minnesota* v. *Olson,* supra, the United States Supreme Court recently held that the defendant had standing to challenge the search of the apartment where he had spent the night, although he did not live there. The court held: "We need go no further than to conclude, as we do, that Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." Id., 1688.

We note, however, that before this United States Supreme Court decision in *Minnesota* v. *Olson,* supra, our case law held that a transient social guest did not have a reasonable expectation of privacy in the place

where he was a guest solely by virtue of his status as a guest. See *State* v. *Callari,* supra, 23. We required that the defendant produce some additional evidence demonstrating that he had a reasonable expectation of privacy. See *State* v. *Cardona,* supra.

In *Cardona,* the defendant was not only related to the owner of the premises searched, but he also stayed there for extended periods of time, sometimes as long as two to three months. The owner also testified that "her door was always open to the defendant and that her home was his home"; id.; and he also contributed to the household.

We further note that the trial court did not have the benefit of *Olson,* and it, therefore, correctly applied the law as it existed in Connecticut at the time of its decision. Because, however, the *Olson* decision clearly states that a houseguest has standing to challenge a search under the fourth amendment, and, hence, affords more substantive rights than the state constitution, we must afford that protection to the defendant.

That the defendant in this case was admitted only when Boykin was home and that he did not possess a key are not determinative. Id., 1689. "[S]ociety recognizes that a houseguest has a legitimate expectation of privacy in his host's home . . . . That the guest has a host who has ultimate control of the [residence] is not inconsistent with the guest having a legitimate expectation of privacy." Id.

Because the defendant had a reasonable expectation of privacy in Boykin's apartment, he had a right to claim the protection of the fourth amendment and to challenge the search. Accordingly, we conclude that the trial court incorrectly found as a matter of law that the defendant lacked standing and failed to consider his claim that the warrant affidavit lacked probable

cause.[2] Because the trial court failed to reach the fact bound issue of probable cause, we cannot properly address it.

The judgment is reversed and the case is remanded with direction to hold a hearing on the defendant's motion to suppress.

In this opinion the other judges concurred.

---

[2] The defendant contends, in a footnote in his brief, that his rights under article first, § 7, of the Connecticut constitution are broader and offer more protection than the United States constitution. He cites *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), and several other cases to support this proposition. He has failed, however, to provide this court with a separate analysis to demonstrate how standing should be treated any differently under Connecticut law. We, therefore, will not address this claim separately. *State* v. *McNellis,* 15 Conn. App. 416, 420 n.2, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).