## STATE OF CONNECTICUT *v.* JOHN J. BROSNAN
## (9149)

DUPONT, C. J., SPALLONE and HEIMAN, Js.

Argued January 15—decision released April 23, 1991

*Jacques J. Parenteau,* with whom, on the brief, was *Carol Ann Connors O'Dea,* for the appellant (defendant).

*Marjorie Allen Dauster,* deputy assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *Peter McShane,* deputy assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of interfering with an officer in violation of General Statutes § 53a-167a (a)[1] and one count of criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1) (A).[2]

The defendant claims that the trial court improperly (1) refused to charge the jury on the defendant's privilege to resist an unlawful arrest, (2) refused to take evidence to determine whether the Groton police department's destruction of a certain videotape was done in bad faith, and (3) reserved its decision on his motion for acquittal that was filed after the state's presentation of evidence.[3] We reverse the judgment of the trial court.

[1] "[General Statutes] Sec. 53a-167a. INTERFERING WITH AN OFFICER: CLASS A MISDEMEANOR. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties.

"(b) Interfering with an officer is a class A misdemeanor."

[2] General Statutes § 53a-117 provides in pertinent part: "CRIMINAL MISCHIEF IN THE THIRD DEGREE: CLASS B MISDEMEANOR. (a) A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another . . . ."

[3] The defendant also attacks the trial court's denial of his motion to suppress physical evidence. Because he was acquitted on the counts that this evidence applied to, this claim is rendered moot. His claim that the court failed to rule on his motion for acquittal that was made pursuant to Practice Book § 883 at the completion of the prosecution's case is also rendered moot by our resolution of his first and second claims.

The jury reasonably could have found the following facts. On September 23, 1989, at about 3:15 a.m., the Groton police received a complaint that fireworks were being discharged at an apartment complex located at 359 Long Hill Road. When Officer John W. Lambert responded to the call, he saw the defendant in the parking area of the apartments. In response to Lambert's questions, the defendant denied any involvement in discharging fireworks, and Lambert left the area.

At about 4:15 a.m., four members of the Groton police department responded to a second complaint that fireworks were being discharged at 359 Long Hill Road. The complainant directed the police officer's attention to a window that faced the parking lot, and stated that that was the window from which fireworks had been discharged. The police found pieces of paper from discharged firecrackers on the ground in front of this window. They also noticed the remains of exploded bottle rockets in the parking lot. The officers went to the window, which was three or four feet above the ground. They looked in the window and observed red cellophane wrappings on the floor of a bedroom. They also saw the fully clothed defendant lying on top of a bed.

After determining that the window was located in apartment eleven, two officers went to the front door of that apartment and two officers went to the rear sliding door. The officers knocked at the back door, and the tenant, Lisa Conte, answered that door. As these officers entered the apartment through the back door, the other two officers entered through the front door. Three of the officers went into the bedroom where the defendant was sleeping, shook him to awaken him, and told him to get up because he was under arrest. The defendant was groggy and smelled of alcohol. When the officers attempted to pull the defendant from the bed, the defendant attempted to break free, and a struggle ensued. As a result of this struggle, the defend-

ant was charged with interfering with an officer in addition to the fireworks charge that had generated the police activity.

The defendant was transported to the police station and a second struggle ensued in the booking room. In the course of this struggle, the defendant kicked a computer, causing a key to break off in its lock. This resulted in a second charge of interfering with an officer, and one charge of criminal mischief. The jury convicted the defendant of the criminal mischief charge and of both of the interfering charges. He was acquitted of all of the other crimes with which he had been charged.

I

The defendant first claims that the court improperly refused to charge the jury on the common law right to resist an unlawful arrest in the home. We agree with the defendant.

Certain additional facts that were heard by the court out of the jury's presence must be understood for a proper resolution of this issue. The defendant and Conte, the lessee of the apartment in question, were good friends. The defendant lived in the same apartment complex in an apartment located upstairs from Conte's. He had stayed overnight at the Conte apartment five or six times over a four year period and was a welcome guest there. On the night of the incident, the defendant was in the apartment with Conte's permission and at her invitation. He was asleep on her bed at the time the police entered Conte's bedroom. He testified that it was his belief that no one would enter the bedroom without Conte's permission, and that he felt that being in her apartment was the same as being in his own apartment. Conte testified by deposition that the police forced their way into the apartment with-

out her permission and entered the bedroom where the defendant was sleeping.

On the basis of these facts, the defendant, in a properly drafted request to charge; see Practice Book § 854; requested the trial judge to instruct the jury that, with respect to the charge of interfering that allegedly occurred at the apartment, the defendant had a qualified common law privilege to resist.[4] The trial court declined to instruct the jury to that effect. We agree with the defendant that he was entitled to such an instruction on that count, and therefore reverse his conviction.

---

[4] The defendant's request to charge reads as follows:

"<u>Privilege to Resist</u>

"As I have previously advised you, John J. Brosnan is accused of the crime of resisting arrest. The fourth amendment to the United States Constitution, made applicable to the state by the fourteenth amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine misdemeanor arrest. I charge you that John Brosnan had been charged with misdemeanors. At common law reasonable resistance to an unlawful arrest was privileged conduct. Coupling an unlawful arrest with an unlawful entry adds to the seriousness of the government's intrusion because of the recognized privacy interest that attaches to a private home. In such circumstances it is reasonable to view the governmental intrusion as especially provocative and defendant's resistance to entry and arrest as excusable and therefore privileged. Courts have recognized a greater privilege to resist an unlawful entry into private premises than to resist an unlawful arrest in a public place. Therefore, an unlawful, warrantless intrusion into the home creates a privilege to resist and punishment of such resistance is therefore improper. In other words, there is a constitutional right to resist unlawful, warrantless entry under the United States Constitution based upon the expectation of privacy in the home which underlies the common law right. The more patently unlawful the intrusion, the more excusable the resistance becomes. So, there is a right to resist an unlawful arrest so long as the resistance does not rise to the level of an assault. Therefore, if you find that the police did not have a warrant to arrest John Brosnan at the time they entered Lisa Conte's apartment and that there was no consent to allow that entry, then you must find that John J. Brosnan's arrest was unlawful and his resistance a privilege so long as you do not find that the resistance amounted to an assault upon the police officer. *State* v. *Gallagher,* 191 Conn. 433[, 437 n.4, 465 A.2d 323] (1983)."

## A

The threshold question is whether the defendant has standing to raise this issue. We conclude that the defendant does have the requisite standing.

It is a well recognized precept of constitutional interpretation that the fourth amendment protects people, not places. *Katz* v. *United States,* 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). An expectation of privacy is said to be legitimate if it is one that society is prepared to recognize as reasonable. *State* v. *Carter,* 22 Conn. App. 118, 121, 576 A.2d 572 (1990). It is clear that under existing federal constitutional law an individual's status as an overnight guest alone is sufficient to show that the guest has a legitimate expectation of privacy in the premises, and that this interest is protected by the fourth amendment. *Minnesota* v. *Olson,* 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990); see also *State* v. *Walker,* 236 Neb. 155, 160–61, 459 N.W.2d 527 (1990). Thus, as an overnight guest in Conte's home, the defendant has standing to challenge the warrantless entry.

As the United States Supreme Court stated in *Minnesota* v. *Olson,* supra, 98: "To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city

for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.

"From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend. Society expects at least as much privacy in these places as in a telephone booth—'a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable.' *Katz* [v. *United States, supra,* 361]."

The defendant's expectation of privacy in the Conte apartment was legitimate because it was rooted in a generally accepted understanding that is recognized and permitted by society. Thus, the defendant can claim the protection of the fourth amendment. *Rakas* v. *Illinois, supra,* 144 n.12.

B

Having concluded that the defendant was entitled to claim the protection of the fourth amendment, we next turn to a determination of whether the defendant's arrest was lawful. We agree with the defendant that it was not.

Because the fourth amendment protects people, not places; *Katz* v. *United States,* supra; it necessarily follows that the defendant was entitled to fourth amendment protection within the confines of the Conte apartment. See *State* v. *Carter,* supra, 121–22.

The "Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." (Citations omitted.) *Payton* v. *New York,* 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). The holding in *Payton* applies with equal force to misdemeanor arrests. *State* v. *Gallagher,* 191 Conn. 433, 437 n.4, 465 A.2d 323 (1983). Thus, the arrest of the defendant, under these circumstances, was unlawful.

On appeal to this court, the defendant properly recognizes that the illegality of the arrest did not act as a bar to his prosecution. See *Gerstein* v. *Pugh,* 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *State* v. *Haskins,* 188 Conn. 432, 442, 450 A.2d 828, cert. denied, 479 U.S. 1084, 107 S. Ct. 1285, 94 L. Ed. 2d 143 (1982). What the defendant did claim, however, was that he was entitled to a charge on the common law right to resist an unlawful arrest in support of his defense to the first count of interfering with an officer that was alleged to have occurred within the confines of the Conte apartment.[5] We agree with the defendant that he was entitled to such a charge and that the court improperly refused to charge the jury on this issue.

Under common law precepts, reasonable resistance to an unlawful arrest was privileged conduct. *State* v. *Amara,* 152 Conn. 296, 299, 206 A.2d 438 (1964).

---

[5] See footnote 4, supra, for text of the defendant's request on this issue.

"Coupling an unlawful arrest with an unlawful entry adds to the seriousness of the governmental intrusion because of the recognized privacy interest that attaches to a private home. In such circumstances, it is reasonable to view the governmental intrusion as especially provocative and a defendant's resistance to entry and arrest as excusable and therefore privileged. Courts therefore have recognized a greater privilege to resist an unlawful entry into private premises than to resist an unlawful arrest in a public place." *State* v. *Gallagher,* supra, 440.

Although we recognize that General Statutes § 53a-23[6] restricts the right to resist an arrest by use of physical force whether such arrest is legal or illegal, this statute has consistently been construed so as not to abrogate the common law privilege to resist an unlawful entry. *State* v. *Gallagher,* supra, 441. Further, since the statute is in derogation of the common law, it cannot be said to have abrogated the privilege by implication because of the principle of statutory construction that requires that penal statutes in derogation of the common law must be strictly construed. Id.; *State* v. *Kish,* 186 Conn. 757, 765, 443 A.2d 1274 (1982).

Our Supreme Court has recognized that the fourth amendment evinces an abhorrence of warrantless physical entry into the privacy of the home, and that this is the chief evil against which the mandate of that amendment is directed. *State* v. *Gallagher,* supra, 443. Thus, because the vitality of the expectation of privacy in the home that underlies the common law right continues, "the more patently unlawful the intrusion, the more excusable the resistance becomes." Id.

---

[6] General Statutes § 53a-23 provides: "USE OF PHYSICAL FORCE TO RESIST ARREST NOT JUSTIFIED. A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."

We continue to adhere to the rule, so well expressed in *Gallagher,* that, with respect to entries made into a place where the occupant enjoys a fourth amendment right, that occupant has the common law privilege to offer reasonable resistance, not rising to the level of an assault, to an unlawful entry. These issues, including any issue of consent, are properly issues to be resolved by the trier of fact under the totality of all of the circumstances. *State v. Zindros,* 189 Conn. 228, 244, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

Because the defendant had a reasonable expectation of privacy in Conte's apartment, he had a right to claim the protection of the fourth amendment and to raise the issue of the common law privilege. Accordingly, we conclude that the court improperly refused to charge the jury with respect to the common law privilege on the charge of interfering that was alleged to have occurred at Conti's apartment. *State v. Gallagher,* supra; *State v. Carter,* supra, 121.

## II

The defendant next claims that this case must be remanded to determine whether the destruction of a certain videotape was done in bad faith. He concedes that he did not properly preserve this claim by requesting this specific relief from the trial court, but claims review of this issue for the first time on appeal pursuant to the plain error doctrine and pursuant to the bypass doctrine of *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State v. Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[7] We agree with the defendant with respect to his plain error claim.

[7] Because of our reliance on the plain error doctrine encompassed in Practice Book § 4185, we do not feel it necessary to provide an *Evans-Golding* analysis. See *State v. Luca,* 19 Conn. App. 668, 670–71 n.2, 563 A.2d 752 (1989).

Certain additional facts are necessary for a proper resolution of this issue. After his arrest at the Conte apartment, the defendant was transported to the Groton police station and taken to the booking room. While the defendant was in the booking room, a struggle ensued, resulting in his being charged with a second count of interfering with an officer and one count of criminal mischief in the third degree. At trial, Officer Gary L. Pendelton testified that a videotape was made of the booking room events that had resulted in the lodging of the additional criminal charges. Pendelton testified that a videotape was running at the time of the alleged criminal conduct and that the tape was later erased for reuse, as part of a routine procedure. Pendleton was unable to say when this evidence had been destroyed. The defendant did not become aware that the event had been videotaped or that the tape had been destroyed until Pendleton testified at trial. The defendant never learned of these events despite the fact that he had previously filed a timely motion for the production of all exculpatory information.

This court is authorized to notice plain error that has not been brought to the attention of the trial court when the interest of justice requires such intervention. Practice Book § 4185; *State* v. *Eric T.*, 8 Conn. App. 607, 614, 513 A.2d 1273 (1986).

The defendant attempted to proffer testimony concerning the destruction of the videotape and the reason for its destruction, but the court sustained the state's objections to that line of inquiry. Thus, the defendant was unable to establish the reason that the tape had been destroyed.

Although the defendant asserts that the videotape would have been exculpatory in nature, and would have provided material for cross-examination, thereby subjecting it to an analysis under *Brady* v. *Maryland,* 373

U.S. 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), nothing in the record supports this assumption. The claim of the defendant also fails to recognize the distinction between evidence that is, in fact, exculpatory in nature and has been suppressed by the state, thereby rendering it subject to a *Brady* review, and evidence that is potentially exculpatory in nature and subject to analysis under *Arizona* v. *Youngblood,* 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). We conclude that the destruction of the tape in this case falls into the second category of cases, and is thus controlled by *Youngblood,* and its progeny.

In order properly to resolve the question of whether destruction of the potentially exculpatory evidence rises to the level of a violation of the defendant's due process rights, we must first resolve the issue of whether the police acted in bad faith when the evidence was destroyed. *State* v. *Leroux,* 18 Conn. App. 223, 227, 557 A.2d 1271, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989). The proper resolution of the issue of whether the police acted in bad faith is a fact bound issue that requires exploration of the officers' knowledge of the exculpatory nature of the evidence at the time it was destroyed. Id.

Application of the *Youngblood* principles to this case leads us to conclude that the defendant was not afforded an opportunity to develop this issue. Because of the potential impact of the tape's destruction on the defendant's conviction of the second interfering count and the criminal mischief count, both of which arose out of events that occurred at the police station, we conclude that the court's refusal to allow the defendant an opportunity to question the circumstances surrounding the destruction of the tape constitutes plain error. Thus, further proceedings are required with respect to the second and fifth counts on which the defendant was adjudged guilty.

## III

The defendant's final claim is that the trial court improperly reserved its decision on his motion for acquittal, made at the end of the state's presentation of evidence, until after the defendant had presented his case. Practice Book § 884. Since it is unlikely that this issue will arise in any subsequent proceeding, we will not address the specific claims of the defendant in this regard. We do note, however, that Practice Book § 884 requires that "the judicial authority shall either grant or deny the motion before calling upon the defendant to present his case in chief." It is obvious that reserving decision on such a motion does not comply with the clear mandate of the rules of practice. See *State* v. *Cook,* 183 Conn. 520, 521–22, 441 A.2d 41 (1981). The defendant makes a due process argument with respect to his claim concerning the violation of this rule of practice. We also note that his brief provides no analysis to support his claim that a violation of Practice Book § 884 rises to the level of a due process violation, or that the record is adequate to provide an *Evans-Golding* review.

The judgment is reversed with respect to the first count of the information, and the case is remanded for a new trial on the first count. As to the second and fifth counts of the information, those counts are remanded with direction to the trial court to hold a hearing to determine whether the destruction of the videotape was done in bad faith. If the trial court concludes that the action of the police in destroying the videotape was not done in bad faith, then the judgment of the trial court is affirmed as to those counts. If the trial court concludes that the destruction of the videotape was done in bad faith, then the trial court shall set aside the

verdict as to the second and fifth counts and grant the defendant a new trial.

In this opinion the other judges concurred.