[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties are before this court on a motion to suppress filed by the defendant, John Kelly. The defendant moves to suppress the evidence seized from the Kelly home on the night of October 19, 1999, on the grounds that the police: (1) conducted an illegal search of the Kellys' garage when a high powered flashlight was used to see through the windows built into the garage; (2) searched the Kellys' house without valid consent from Mrs. Kelly; and (3) would not have discovered the evidence through either the independent source or the inevitable discovery doctrines.
 FINDINGS OF FACT
On October 19, 1999, Officer Steven Pritchard, a fifteen year veteran of the Westport Police Department (WPD), responded to a motor vehicle accident on Wilton Road at Rices Lane. At the scene, Pritchard found a Harley-Davidson motorcycle and a person lying on the ground. No other motor vehicles were found in the immediate area of the accident. Debris from another motor vehicle was found at the scene. Based upon the type of debris recovered, Pritchard concluded that the debris came from a Chrysler-type sport utility vehicle (SUV).
Sergeant Dale Call, a nineteen year veteran of the WPD, arrived on the scene at approximately the same time as Pritchard. Call learned from fellow officers that witnesses to the accident had seen the other motor vehicle involved in the accident turn off Wilton Road onto Rices Lane. Rices Lane is a dead end. Because Rices Lane has no outlet, Call surmised that the owner of the SUV probably lived, or was visiting, in the neighborhood.
Officer John Rocke, a twelve year veteran of the WPD, was dispatched from the accident scene to the River Lane/Rices Lane area to look for the second motor vehicle. Rocke drove through the neighborhood checking any area where a vehicle could have been parked. In addition to driving through the neighborhood, Rocke drove up into the driveway of each house along the street.
While in the driveway of 12 Rices Lane, Rocke noticed a glow that resembled an interior light emanating from the garage area of the CT Page 10658 neighboring home at 10 Rices Lane. Rocke then pulled into the driveway and up to the garage area of 10 Rices Lane. Rocke used the spotlight mounted on his patrol car to ascertain that an SUV-type vehicle's interior light was emitting the glow. From his patrol car, Rocke was able to identify the vehicle as an SUV from its roof rack.
Rocke then exited his vehicle and approached the garage on foot. Using his flashlight, Rocke was able to look through the windows on the garage and observe damage to the front passenger side of the SUV. At this time, Rocke heard Pritchard's radio request for a vehicle check on a John Kelly (Mr. Kelly) of 10 Rices Lane.
Officer Pritchard requested the vehicle check on John Kelly of 10 Rices Lane following his encounter with Mr. Kelly at the accident scene. Mr. Kelly had been standing on a corner observing the scene when Pritchard approached him and questioned him. Pritchard further noted that Mr. Kelly's breath smelled of alcohol and that it was unusual for him to have arrived and remained at the scene after much of the excitement had dissipated.
Upon hearing Pritchard's motor vehicle request, Rocke notified headquarters and the other officers that he was at 10 Rices Lane and possibly had the other vehicle involved in the accident. Subsequent to this radio transmission, Mrs. Louise Kelly (Mrs. Kelly) arrived at her home at 10 Rices Lane. Rocke informed Mrs. Kelly that the WPD was investigating a motor vehicle accident.
Additional officers arrived at 10 Rices Lane, at which point Rocke inquired as to whether Mrs. Kelly would check to see if her husband was in the house. Mrs. Kelly informed Rocke that she had spoken with her husband only minutes prior to her arrival home and stated that she believed that her husband was in the house. Mrs. Kelly agreed to look in the house for him and entered the home. Officer Rocke remained in the doorway to 10 Rices Lane while Mrs. Kelly entered the house to look for Mr. Kelly.
Mrs. Kelly returned to the officers with a concerned look on her face. Mrs. Kelly told the officers that she had discovered a ladder at the bottom of the basement stairs. Mrs. Kelly was concerned for her husband, whom she believed to be home, and she did not wish to look in the basement for Mr. Kelly. The information that Mrs. Kelly believed her husband was in the house, coupled with the discovery at the bottom of the basement stairs, led Rocke to believe that Mr. Kelly may have harmed himself. Mrs. Kelly then asked the officers if they would check the house for her husband. The officers proceeded to search the basement and the attached garage of 10 Rices Lane. CT Page 10659
Once in the attached garage the officers were able to view and inspect the SUV, which was a Chrysler-made Jeep Grand Cherokee. The officers noted the damage to the Jeep and then exited the house. Rocke was directed to remain outside the house to secure the area and to wait for the owner of the Jeep, Mr. John Kelly. The other officers returned to headquarters to attempt to procure a search warrant for the Jeep Grand Cherokee that was parked in the garage located at 10 Rices Lane.
A short while later the defendant, Mr. Kelly, arrived on foot at 10 Rices Lane. Rocke ascertained Mr. Kelly's identity and requested that Mr. Kelly not enter the house until the other officers returned with the warrant. The officers returned with the warrant, placed Mr. Kelly under arrest and seized the Jeep from the garage at 10 Rices Lane.
 DISCUSSION
Federal and Connecticut state law both acknowledge adherence to the policy that the fourth amendment protects persons, not places, and is a right that cannot be raised vicariously, but must be pursued personally. See Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373
(1998); see also United States v. Salvucci, 448 U.S. 83, 87,100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421, L.Ed. 387 (1978), reh'g denied, 439 U.S. 1122, 99 S.Ct. 1035,59 L.Ed.2d 83 (1979); Katz v. United States, 389 U.S. 347, 351, 353, 88 5. Ct. 507, 19 L.Ed.2d 576 (1967); State v. Brosnan, 24 Conn. App. 473,478, 589 A.2d 1234 (1991), rev'd in part, aff'd in part, 221 Conn. 788,608 A.2d 49 (1992). The person challenging the legality of the search and seizure bears the burden of proving that he or she possessed a "reasonable expectation of privacy" in the thing or place searched. Statev. Pittman, 209 Conn. 596, 601, 553 A.2d 155 (1989); see State v.Bernier, 246 Conn. 63, 76 717 A.2d 652 (1998) (holding that "[t]he defendant bears the burden of proving that his privacy interests in the place searched are reasonable"); see generally Minnesota v. Carter, supra, 525 U.S. 88 (discussing a defendant's ability to prove afourth amendment violation); see also Rawlings v. Kentucky, 448 U.S. 98, 104,100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
Under both the fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut, a search conducted without a warrant is per se unreasonable. See Steagald v.United States, 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); see also Katz v. United States, supra 389 U.S. 357; State v. Joyce,229 Conn. 10, 24-25, 639 A.2d 1007 (1994), cert. denied, 523 U.S. 1077,118 S.Ct. 1523, 140 L.Ed.2d 674 (1994). A defendant will not be permitted to challenge the unreasonableness of the warrantless search and seizure CT Page 10660 absent a showing that that particular defendant: (1) possessed a legitimate expectation of privacy; and (2) that expectation of privacy is deemed reasonable by society. See Minnesota v. Carter, supra, 525 U.S. 88; see also State v. Bernier, supra, 246 Conn. 72; State v. Hill,237 Conn. 81, 92, 675 A.2d 866 (1996); State v. Joyce, supra, 229 Conn. 20.
The question here is whether the defendant maintained a reasonable expectation of privacy in items stored in a garage that has windows through which the items may be viewed. This determination rests upon several factors. First, does a garage fall within the definition of curtilage? Second, even if a garage is part of the curtilage, does the use of a flashlight to look into unobstructed windows constitute a search, and, if so, can a warrantless search be lawful?
 DETERMINING CURTILAGE
It is well settled that a person's home is afforded the utmost protection against unconstitutional searches and seizures of the persons and things inside of the home. See State v. Brown, supra, 198 Conn. 356-57. "[W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Katz v.United States, supra, 389 U.S. 351. Accordingly, areas outside of the house or dwelling may fall within the purview of federal and state constitutional protection.
"[C]urtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life. . . ." (Internal quotation marks omitted.) Oliver v. United States,466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); see UnitedStates v. Long, 176 F.3d 1304, 1308 (10th Cir. 1999), cert. denied,120 S.Ct. 283, 145 L.Ed.2d 237 (1999); see also State v. Santiago,224 Conn. 494, 521, 619 A.2d 1132 (1993). "[T]he words dwelling or dwelling house have been construed to include, not only the main house, but all of the cluster of buildings convenient for the occupants of the premises, generally described as within the curtilage." (Internal quotation marks omitted.) Temperani v. United States, 299 F. 365, 366-67
(9th Cir. 1924). Depending upon where the garage is situated, it may be deemed as located within the cluster of buildings considered within the curtilage. See id.; see generally Coolidge v. New Hampshire, 403 U.S. 443,459 n. 17 (1971), reh'g denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120
(1971) (discussing inclusion of the garage within the curtilage); see generally State v. Morrill, 205 Conn. 560, 562 n. 3, 534 A.2d 1165 (1987) (discussing location of a garage on property where the curtilage of the above property was surrounded by a fence).
"The entry without permission, express or implied, into a private CT Page 10661 garage, without warrant, on a mission of search and seizure . . . is unlawful." United States v. Slusser, 270 F. 818, 820 (D.C. Cir. 1921). Whether a person owns or rents a garage, that individual retains a right to remain free from warrantless searches and seizures, just as he or she would if the search and seizure occurred in their own personal dwelling. See id. However, a garage is not a house, but merely curtilage of the house, and therefore should not be afforded the same protections against search and seizure that a house receives. See United States v. Wright,449 F.2d 1355, 1362 (D.C. Cir. 1971), cert. denied, 405 U.S. 947,92 S.Ct. 986, 30 L.Ed.2d 817 (1972).
The Supreme Court in United States v. Dunn, 480 U.S. 294,107 S.Ct. 1134,94 L.Ed.2d 326 (1987), established four factors that should be applied to determine whether an area falls within the ambit of curtilage. See also State v. Liptak, 21 Conn. App. 248, 256, 573 A.2d 323 (1990), cert. denied, 215 Conn. 809, 576 A.2d 540 (1990). These factors, while not dispositive, aid in answering the question of whether the garage should fall under the `umbrella' of fourth amendment protection" afforded to homes. United States v. Dunn, supra, 480 U.S. 301. The four Dunn factors examine: (1) the proximity of the area claimed to be curtilage; (2) whether the area is included within an enclosure; (3) the nature of use to which the area is put; and (4) the steps taken to protect the area from observation from those who pass by. See id.
First, the proximity of the garage to the house must be considered. See id. The garage at 10 Rices Lane is attached to the. house. A door connects the garage to the basement, which has a stairway leading directly into the house. The garage appears to fall within the curtilage of the house based upon its proximity. See generally Bassett v. Pepe,94 Conn. 631, 635, 110 A. 56 (1920) (defining curtilage as lying within the same fence as the main house).
Second, the Kellys' garage is not part of an enclosure, nor is it in an area secluded from public access. It is true that the garage is set back from the road, but no fence prevents passersby from entering the property. In fact, Rocke, while in the neighboring driveway, was able to see light in the Kellys' garage window. Once he actually drove into the Kellys' driveway, Rocke was able to identify the vehicle in the garage as an SUV from his patrol car. The design of the driveway makes it a semi-public area. Hence, the garage's accessibility and visibility strike against a finding that the garage falls within the curtilage of the house.
Third, the defendant offered no evidence to support a finding that the garage is related to the activities and privacies of domestic life beyond the storage of the family vehicles when not in use. Storage of vehicles CT Page 10662 in a garage with windows visible to passersby does not lend itself toward a holding that the garage is protected curtilage.
Fourth, the Kellys took no steps to prevent public observation of either the garage or its contents. While the garage is set back from the road and is not attached to the main driveway, it does have windows. The windows are in no way covered or concealed to prevent the curious passerby from peering into the garage. The unobstructed windows allowed Rocke to view the light and the roof of the Jeep Grand Cherokee from the neighboring driveway, before he actually stood on the Kellys' property and looked into the garage. Leaving windows in a garage unobstructed allows any casual passerby to peer in and does not meet the standard necessary to be deemed protected curtilage. See State v. Brown, supra,198 Conn. 354.
Application of the Dunn factors suggests that the garage at 10 Rices Lane, though attached to the home, does not fall within thefourth
amendment protection afforded to curtilage. The only fact that exists to support an argument that the garage should be considered protected curtilage is that the garage is attached to the house, with a door that leads into the basement. Aside from that, no evidence has been presented to prove that the garage is associated with the privacies of life. The garage is not protected curtilage and any observations made by Officer Rocke that led to the discovery of evidence did not constitute a search.
Even if the garage could be considered curtilage, merely calling the garage curtilage would be insufficient to invoke a fourth amendment protection of that garage. A reasonable expectation of privacy in the garage must exist before the fourth amendment protections afforded to dwellings will attach. No reasonable expectation of privacy in a motor vehicle placed in the garage at 10 Rices Lane can be found to exist in this case.
 REASONABLE EXPECTATION OF PRIVACY IN CURTILAGE
A finding that the Kellys' garage lies within the curtilage is insufficient to determine that Officer Rocke's conduct amounted to a search. See generally United States v. Long, supra, 176 F.3d 1308 (holding that a violation of curtilage alone is insufficient to prove afourth amendment violation). Even if the garage is within the curtilage, the defendant must prove that he has a reasonable expectation of privacy in the attached garage for either federal or state constitutional protections to attach. See United States v. Long, supra, 176 F.3d 1308. "Objects and activities located within a home [that are] visible to others in areas expressly or impliedly open to the public are not accorded fourth amendment protection because any privacy expectation in CT Page 10663 such exposed areas would be unreasonable." State v. Brown, 198 Conn. 348,357, 503 A.2d 566 (1986).
"A driveway is only a semiprivate area." United States v. Magana,512 F.2d 1169, 1171 (9th Cir. 1975), cert. denied, 423 U.S. 826,96 S.Ct. 42, 46 L.Ed.2d 43 (1975). Whether a driveway shall be afforded the protections of the fourth amendment depends upon the "nature of the activities and the degree of visibility from the street." Id. But these factors alone are not determinative of whether fourth amendment protection applies to driveways. It is necessary to consider whether (1) the owner's expectation of privacy in the driveway is reasonable; and (2) whether the officer's reason for entering the driveway is reasonable. SeeUnited States v. Magana, supra, 512 F.2d 1171.
First, the Kelly driveway is not secluded from public view. The area is not surrounded by any type of enclosure, nor is entrance to the driveway prohibited by any gate. The driveway, semipublic by design, is visible from the street and from the neighboring properties. The defendant presented no evidence to prove that the driveway is put to any use associated with the privacies of domestic life. Therefore, it would be unreasonable to conclude that the defendant possessed any expectation of privacy in the driveway to his house.
Second, Officer Rocke acted reasonably when he entered the driveway at 10 Rices Lane to check for any vehicles matching the description of the vehicle suspected of fleeing the scene of the hit and run accident. No barriers existed to suggest either an expectation of privacy or a desire to prevent Officer Rocke, or any other individual, from entering the driveway.
In United States v. Wright, the court held that a person does not retain a privacy interest in a garage with doors that do not close tightly. United States v. Wright, supra, 449 F.2d 1357. In Wright, the defendant left stolen motor vehicle parts in a garage constructed with three doors that did not fully secure to protect the contents of the garage from public view. Id., 1356. That court found that the officer's utilization of a flashlight to look through the opening did not constitute unlawful conduct. United States v. Wright, supra, 449 F.2d 1357.
Similar to the defendant in Wright, Kelly retained no expectation of privacy in the items placed in the garage because the contents of the garage were exposed to the public through the uncovered windows and access to the garage was not restricted or prohibited. Here, Officer Rocke's use of a flashlight to look through the garage windows should not and does not constitute unlawful conduct warranting suppression of the evidence seized from the Kelly garage. CT Page 10664
If an officer is in a position to view an item any curious passerby could have viewed, regardless of how the officer or passerby manipulates his body to view the item, the item is within plain view and the officer's conduct will not constitute a search. See id., 1358. Additionally, "the need to employ a visual aid at night in the form of a flashlight" will not "convert this from lawful into unlawful conduct."United States v. Wright, supra, 449 F.2d 1357 (holding officer's use of a flashlight to look through an opening in a garage did not constitute an unlawful search). "The use of a searchlight or flashlight . . . is not prohibited by the Constitutional guaranty." State v. Plummer, 5 Conn. Cir. Ct. 35, 39 (1967).
When a police officer has a legal right to be in the position he is in, that officer need not procure a warrant to search or seize contraband or items related to a crime that lie within that officer's plain view. See United States v. Hanahan, 442 F.2d 649, 652 (7th Cir. 1971); see alsoState v. Eady, 245 Conn. 464, 470, 715 A.2d 724 (1998), superseded on reconsid'n, 249 Conn. 431, 733 A.2d 112 (1999), cert. denied ___ U.S. ___ 1205; Ct. 551, 145 L.Ed.2d 428 (1999) (holding that officers in a position they have a legal right to be in "need not ignore incriminating evidence in plain view"). "When the police, having come onto private property to conduct an investigation, restrict their movements to areas that . . . are considered semi-public, observations made from that vantage point are not illegal under the fourth amendment." State v.Liptak, supra, 21 Conn. App. 255. Such a seizure is not deemed unreasonable because the officer seizes items left open to public view, not secured in an area the individual expects shall remain free from public scrutiny, and thus the officer's actions do not constitute a search. See United States v. Lace, 669 F.2d 46, 50-51 (2d Cir. 1982), cert. denied, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982), reh'g denied, 459 U.S. 1060, 103 S.Ct. 480, 74 L.Ed.2d 626 (1982) (holding that "[w]hat is observable by the general public [is] observable without a warrant by the police as well").
Officer Rocke had a legal right to be in the defendant's driveway, a semi-public area, where he was able to freely look into the garage. In this case, the garage attached to the defendant's home has built-in windows. The windows are approximately five feet from the ground and are not in any way concealed or covered. Any person can view the interior of the garage. As a police officer conducting an investigation into a motor vehicle accident, Officer Rocke had the right to be in the driveway at 10 Rices Lane. Thus, no expectation of privacy existed to elevate Officer Rocke's conduct to that of a search requiring a warrant.
Kelly further diminished his privacy expectation in placing the Jeep in CT Page 10665 the garage because the Jeep was backed in, leaving the damaged front passenger side of the Jeep exposed to whomever may have had the occasion or the opportunity to peer through the uncovered garage windows. Officer Rocke's use of the flashlight to aid his visual inspection at night does not equal an unlawful search because no search may occur where no expectation of privacy exists. See id. No expectation of privacy existed in the garage. Officer Rocke's conduct did not amount to an unlawful search that requires exclusion of the evidence.
 THE INDEPENDENT SOURCE DOCTRINE
Evidence will not be excluded if doing so would put the police in a worse position than they would have been in if no error or violation had occurred. See Murray v. United States, 487 U.S. 533, 537,108 S.Ct. 2529,101 L.Ed.2d 472 (1988). The "exclusionary rule has no application [where] the [g]overnment learned of the evidence through an independent source." State v. Joyce, 243 Conn. 282, 289-90, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S.Ct. 1523, 140 L.Ed.2d 674 (1998). For evidence to be admissible under the independent source doctrine, the evidence must be seized in a "search untainted by illegal police activity." Id., 289-90; see also State v. Cobb, 251 Conn. 285, 333,743 A.2d 1 (1999) (holding that the illegal evidence must be discovered in a search uninfected by illegal police action).
In this case, the independent source of the evidence originates from Mrs. Kelly's request that the WPD officers enter the house and look for her husband. Mrs. Kelly is part owner of the house at 10 Rices Lane. She retains a privacy interest in the house, and as an owner, possesses the ability to waive that interest by inviting persons, including police officers, into the house. See Frazier v. Cupp, 394 U.S. 731, 740,89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (holding that a joint user may consent to a search); see also State v. Zindros, 189 Conn. 228, 250 456 A.2d 288
(1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1014, 79 L.Ed.2d 244
(1984) (finding that a co-owner may authorize the search of jointly held possessions).
Here, Mrs. Kelly specifically requested that the officers enter the house and search for her husband. Evidence in plain view may be seized when the police have a right to be in the place where the evidence is viewed. See State v. Eady, supra, 245 Conn. 470. The officers were asked to look for Mr. Kelly and, in so doing, found a damaged Jeep Grand Cherokee similar in type to the one suspected of fleeing the accident scene. The officers should not be required to turn a blind eye to such evidence merely because they were not asked to look for the Jeep and, at the time, possessed no warrant to search for the Jeep. CT Page 10666
Therefore, even if this court were to hold that Rocke had conducted an illegal search, the evidence would not be excluded because of the independent source doctrine. What necessarily and inevitably follows admission of the evidence through the independent source doctrine is an evaluation of the evidence under the doctrine of inevitable discovery.
 THE DOCTRINE OF INEVITABLE DISCOVERY
Inevitable discovery is "an extrapolation from the independent source doctrine: [because] the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." Murray v. United States, supra, 487 U.S. 539. "Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means."State v. Badgett, 200 Conn. 412, 433, 512 A.2d 160 (1986), cert. denied,479 U.S. 940, 107 S.Ct. 423, 93 L.Ed.2d 373 (1986). The police must prove that the lawful means were possessed and being pursued prior to the unlawful discovery for evidence to qualify as admissible under the inevitable discovery doctrine. See Murray v. United States, supra, 487 U.S. 539; see also State v. Vivo, 241 Conn. 665, 673, 697 A.2d 1130
(1997).
Here, the damaged Jeep Grand Cherokee would have been discovered regardless of whether Officer Rocke had ever found and viewed the damaged Jeep inside of the defendant's garage. The defendant returned to the accident scene and voluntarily spoke with officers at the scene. The defendant voluntarily offered his name and address upon request by the officers at the accident scene. The name and address allowed the WPD to run a motor vehicle registration search. Had this search been completed, the WPD would have known that the defendant owned a Jeep Grand Cherokee similar to the type suspected of fleeing the accident scene. This information would have provided officers with the probable cause necessary to request and obtain a warrant to search the Kelly residence.
The means that would have led to a lawful discovery of the evidence must have been placed in motion prior to the means by which the evidence was unlawfully recovered. See Murray v. United States, supra, 487 U.S. 539; see also State v. Vivo, supra, 241 Conn. 673. The officers at the accident scene requested the motor vehicle check on John Kelly of 10 Rices Lane before Officer Rocke radioed that he had possibly located the suspect vehicle. Thus, lawful means for discovering the evidence were set in motion prior to any alleged unlawful discovery, and as such, the evidence should not be suppressed. CT Page 10667
The United States Supreme Court has previously held that the police would be disadvantaged by the exclusion of evidence that would have inevitably been discovered if unlawful means had not been. employed. SeeNix v. Williams, 467 U.S. 431, 104 S.Ct. 431, 81 L.Ed.2d 377 (1984). "Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place." Id., 447. The exclusion of evidence that would have been discovered through lawful means had the unlawful discovery not occurred would "wholly fail to take into account the enormous societal cost of excluding truth in the search for truth in the administration of justice." Id., 445.
 CONCLUSION
The motion to suppress is denied because no search exists where there is no reasonable expectation of privacy. The defendant's garage is constructed with windows. The defendant failed to take steps to obstruct the public's view into the garage through the windows. The officer's use of a flashlight to illuminate the interior of the garage through the unobstructed windows does not constitute an unlawful action. As such, no illegal search occurred and the evidence obtained through the officer's "plain view" gathering of evidence through the garage windows is admissible.
Also, the independent source doctrine would permit the admission of evidence recovered and seized from the defendant's garage, even if the officer's conduct amounted to that of a search. Mrs. Kelly requested that the police officers enter her house and search for her husband. Mrs. Kelly possessed the authority and the ability to consent to a search of her house, and she did so by requesting police assistance in the search for her husband. Thus, the evidence discovered in the garage during the search for the defendant is admissible.
Further, the doctrine of inevitable discovery would permit the admission of evidence seized from the defendant's garage, even if the officer's conduct of illuminating the garage with his flashlight amounted to a search. The police questioned the defendant at the scene of the accident and ascertained his name and address. A motor vehicle check of the defendant was requested by officers at the scene, prior to Officer Rocke's discovery of the evidence in the defendant's garage. The vehicle check would have revealed ownership by the defendant of a vehicle similar in type to that suspected of fleeing the scene of the accident. That, in addition to the officers' observations of the defendant at the scene, would have constituted sufficient probable cause for a search warrant to issue for the defendant's residence. CT Page 10668
This court holds that the officer's actions at 10 Rices Lane did not constitute a search, and as such, the defendant's motion to suppress is denied. Further, even if the officer's actions did amount to an unconstitutional search, the defendant's motion to suppress would still be denied because the doctrines of independent source and inevitable discovery would permit the state to introduce the evidence recovered from the defendant's garage.
RODRIGUEZ, J.