778 P.2d 1306

**STATE of Arizona, Appellant,**

v.

**Jesse Robert GERHARDT, Appellee.**

**No. 1 CA–CR 88–276.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 28, 1989.

Reconsideration Denied April 7, 1989.

Review Denied Sept. 19, 1989.

Charles R. Hastings, Yavapai County Atty. by Julia W. Stoner, Deputy County Atty., Prescott, for appellant.

Lawrence W. Katz, Prescott, for appellee.

OPINION

CONTRERAS, Presiding Judge.

In this criminal appeal, we consider the question of whether a person charged with driving while under the influence of alcohol has been deprived of due process by the state's failure to preserve a videotape of the person which was taken after his arrest. Based upon the record presented, we conclude that no due process violation has been shown. Therefore, the trial court's order dismissing the charge against appellee is reversed and the case is remanded for reinstatement of the charge and further proceedings.

On September 20, 1987, Prescott police officer Larry Martinez observed appellee driving his vehicle in an erratic manner and exceeding the speed limit. The officer stopped appellee. After observing what he believed to be signs of intoxication and after administering field sobriety tests, Officer Martinez arrested appellee. Appellee was then taken to the sheriff's office where a breathalyzer test was unsuccessfully administered. While in the "intoxilyzer room" at the sheriff's office, the arresting officer videotaped appellee.[1] Whether due to mechanical malfunction or human error while operating the video camera, that portion of the videotape which should have depicted appellee and others is blank. It is not possible to determine from the record what happened to cause a portion of the videotape to be blank.[2]

Appellee was subsequently charged with being in actual physical control of a vehicle while under the influence of intoxicating liquors with two prior convictions within 60 months.[3] The omission on the videotape was uncovered during the pretrial discovery process. Appellee then filed a motion to dismiss the charge based on the state's failure to preserve the videotape. He claimed that the loss of this potentially exculpatory evidence denied him fundamental fairness and due process to the extent that he would not be afforded a fair trial. The state opposed the motion, contending that appellee was not prejudiced by the loss of the videotape. At the time set for the evidentiary hearing, the state made an offer of proof that the arresting officer would testify that the videotape would have been inculpatory rather than exculpatory as claimed by appellee.[4] The trial court granted the motion to dismiss. The state filed a timely notice of appeal. We

have jurisdiction pursuant to A.R.S. § 13–4032(1).

In this appeal, this court is once again called upon to consider the area of constitutionally guaranteed access to evidence. In this type of case, we believe that it is important, as an initial matter, to categorize the conduct of the state which has resulted in the loss of evidence. The state's conduct may be grouped into three general categories: 1) failure to collect evidence in the first instance, 2) failure to preserve evidence once it has been collected, and 3) suppression of evidence which has been both collected and preserved. After reviewing state and federal case law in this area, we conclude that it is important to carefully distinguish these three types of conduct because the applicable legal rules depend upon the particular category in which the conduct falls.

At one end of the evidentiary spectrum is the situation where the state fails to collect evidence in the first instance. In another appeal decided today, this court held that the state's failure to collect evidence of a drunk driving suspect by way of audio or videotape does not rise to the level of a constitutional violation. That is, a drunk driving defendant does not have an absolute constitutional due process right to have his encounter with the arresting officer preserved on audio or videotape. *See State v. Havatone,* 159 Ariz. 597, 769 P.2d 1043 (Ct.App.1989).

At the other end of the evidentiary spectrum is the situation where the state both collects and preserves evidence, but suppresses that evidence at the stage in the proceedings when the defense requests its production or the stage when that evidence becomes otherwise material to the defense.

---

1. There was no showing that police videotaped appellee's performance of field sobriety tests.

2. The state, with some degree of justification, contends that its conduct was a failure to "collect" evidence rather than a failure to "preserve" evidence because the events involving appellee which a police officer attempted to film were never preserved on videotape. We acknowledge this distinction, however, for purposes of this decision, we proceed on the assumption that the evidence was not preserved.

3. *See* A.R.S. § 28–692(A) (1989).

4. Appellee correctly points out that the arresting officer's testimony is not material to the inquiry presented here. *See Scales v. City Court of City of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979) (fact that breath test result incriminates defendant does not excuse state's failure to preserve breathalyzer test ampoules).

By way of example, we refer to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the state withheld a crucial extrajudicial statement made by the defendant despite defense counsel's request for all such statements. In discussing the state's conduct, the court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. The instant case is clearly not factually analagous to *Brady*. In the present case, the evidence was destroyed, inadvertently or otherwise, prior to any request by defense counsel for its production. Therefore, cases such as *Brady*, in which the issues involve the state's suppression of evidence, are distinguishable.

The third type of conduct, which lies somewhere between a failure to collect evidence and the suppression of evidence, involves the failure to preserve evidence which has already been collected. We conclude, as previously indicated, that the state's conduct in this case is most properly categorized as a failure to preserve evidence. Therefore, we review and consider those state and federal decisions in which the law regarding preservation of evidence has been set forth.

The facts of this case are analogous to those presented in the recent United States Supreme Court case, *Arizona v. Youngblood*, ―― U.S. ――, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood*, the state failed to properly preserve semen samples as well as certain articles of clothing belonging to the molestation victim from which further semen samples could have been obtained. *Id.* at ――, 109 S.Ct. at 335, 102 L.Ed.2d at 286. As a result, a criminal pathologist was unable to successfully test the samples and clothing. *Id.* On appeal from his criminal convictions in the trial court, appellee contended that the state had breached its constitutional duty to preserve evidence which could prove useful to him in his defense. *Id.* The Supreme Court rejected an interpretation of the fundamental fairness requirement of the due process clause which would impose on police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at ――, 109 S.Ct. at 337, 102 L.Ed.2d at 289. Instead, the court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* The defendant's due process argument was rejected in *Youngblood* because there was no suggestion of bad faith on the part of the police. *Id.*

 Even in situations where the defendant cannot show bad faith on the part of the state in failing to preserve material evidence, the defendant may nevertheless be entitled to a dismissal if he can make a sufficient showing of substantial prejudice. In *State v. Hughes*, 119 Ariz. 261, 262, 580 P.2d 722, 723 (1978), certain physical evidence was destroyed subsequent to the trial court's acceptance of the defendant's plea agreement, but before his trial held following a determination that the plea was not intelligently made. Immediately prior to trial, defense counsel filed a motion to dismiss on the basis that the state's loss of evidence had violated defendant's right to due process by forever depriving him of the opportunity to a fair and just trial through presentation of exculpatory evidence. *Id.* After noting that defendant had failed to show any substantial prejudice as the result of the loss of evidence, the court stated that "where evidence has been lost or destroyed by the prosecution, lacking a clear showing of prejudice an accused is protected by giving an instruction similar to that found appropriate in *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964)." *Id.* 119 Ariz. at 264, 580 P.2d at 725. Thus, where a defendant has failed to show prejudice as a result of the loss of certain evidence, he is at most entitled to a *Willits* instruction in which the jury is advised that it may infer the true fact against the state's interest. *Id.* Because the defendant in *Hughes* failed to make a suffi-

cient showing of either bad faith or prejudice, it was ordered that he proceed to trial. *Id.*

After reviewing and considering the facts of the instant case in conjunction with the applicable law, we conclude that the appellee has failed to make the requisite showing of either bad faith or prejudice necessary to justify a dismissal of the charges filed against him. First, there has been neither an allegation nor any showing of bad faith on the part of the state in its failure to preserve a videotape of the appellee. Rather, it is unknown why the actions of appellee which the police attempted to videotape on the night of his arrest do not appear on the videotape. There is nothing in the record to suggest that the blank spot on the videotape is the result of the state's bad faith nor can this court infer bad faith. Indeed, both parties stipulated at the trial court level that the blank in the videotape would have depicted several other DUI defendants in addition to appellee. Therefore, it is impossible for this court to conclude that the state's failure to preserve evidence in the form of a videotape was a result of the state's bad faith.

Similarly, appellee has failed to show how he has been prejudiced by the loss of the videotape. Initially, we note that the videotape would not have contained evidence of the actual conduct constituting the alleged offense. Rather, the tape would have depicted only certain events occurring after the alleged offense had been committed and after appellee had been arrested. Although the contents of the videotape would bear some relevance to appellee's condition subsequent to the alleged offense, appellee's guilt or innocence does not turn on the contents of the videotape. Therefore, the videotape is not the type of evidence the loss of which so prejudices appellee that the charges should be dismissed.

Second, the videotape is not directly material to a crucial issue in the trial. For example, in *State v. Escalante*, 153 Ariz. 55, 61, 734 P.2d 597, 603 (App.1986), the court held that "when identity is an issue at trial, and the police permit the destruc-

tion of evidence that could eliminate the defendant as the perpetrator, such loss is material to the defense and is a denial of due process." In the instant case, identity is not at issue, and, unlike the semen sample at issue in *Escalante*, the videotape could not potentially eliminate appellee as a suspect. The videotape could not completely exculpate appellee. Rather, his argument on appeal is that the videotape, had it been preserved, could have been of potentially exculpatory value to his case. We conclude that a showing of prejudice dependant on speculation as to the potentially exculpatory value of lost evidence is insufficient to justify a dismissal.

In conclusion, we hold that where a defendant is unable to show that the state's failure to preserve evidence was due to bad faith or that the state's failure to preserve evidence has resulted in substantial prejudice to his case, a dismissal of the charge is unwarranted. Absent an abuse of discretion, this court will not disturb a trial court's order for dismissal. *State v. Hansen*, 156 Ariz. 291, 294, 751 P.2d 951, 954 (1988). However, because we have concluded on this record that appellee did not make the required showing of either bad faith or substantial prejudice, the trial court's order of dismissal was an abuse of discretion. Therefore, we reverse the trial court's order of dismissal and remand this matter for reinstatement of the charge and further proceedings.

REVERSED AND REMANDED.

EUBANK and HAIRE, JJ., concur.