Hillsborough
No. 89-412

# The State of New Hampshire

v.

# Peter Smagula

August 29, 1990

*John P. Arnold*, attorney general (*John S. Davis*, assistant attorney general, on the brief, and *Anne Renner*, assistant attorney general, orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant, Peter Smagula, was found guilty by a jury in Superior Court (*Pappagianis*, J.) of armed robbery, RSA 636:1. On appeal he asserts that he was denied due process of law under the fourteenth amendment to the United States Constitution and was similarly denied his rights under part I, article 15 of the New Hampshire Constitution when, even though he remained a suspect, the investigating police detective failed to preserve an array of photographs, in accordance with departmental policy, because the victim was unable to identify the defendant in the array as presented. Finding no constitutional violation, we affirm.

On the evening of June 18, 1987, while working at her job as a gas station attendant in Manchester, the victim was accosted by a man who demanded money from her at knife point. She complied, giving him the day's cash receipts totalling approximately ninety dollars. Sometime after the robbery, that same evening, the victim viewed an array of photographs at the Manchester police station, in an effort to identify the robber to the police. Suspecting from his investigation thus far that the defendant might be the robber, Detective Paul Beaudoin assembled an array including a 1982 black and white photograph of the defendant from his Manchester Police Department criminal jacket, or file, together with six black and white photographs from the Smith & Wesson Identi-Kit IDMO, Identification Modus Operandi (hereinafter IDMO), classification number 67.

The IDMO classification system is designed to group photographs from police department criminal jackets according to certain characteristics, to allow police to utilize them in compiling photographic line-ups. IDMO classification number 67 refers to white males 34-years-old or younger that are shorter than five-foot-six inches and that have brown hair. The six photographs from IDMO group 67 also belonged to the subclassification of white males with facial hair.

All the photographs in IDMO group 67 (with facial hair) were marked on the back with the number 67. The array was shown to the victim in such a way that only the head of each subject was visible. The victim was unable to identify the robber from the photographic line-up.

Afterwards, Detective Beaudoin retained the defendant's photograph and, in accordance with departmental policy requiring the return of photographs used in unsuccessful line-ups, to avoid depletion of the department's stock of IDMO photographs, he returned the other photographs to their files. He prepared a report of the identification session that evening, noting that all the pictures in the array were from IDMO group 67 (with facial hair) and that the victim had not made an identification. However, although it is not clear from the record what the departmental policy was in this regard, according to his own testimony he erred in not indicating in his report which specific pictures were in the line-up before replacing them in the file. The result was that the array could not be reconstructed at trial.

Having heard that he was sought by the police, two days later, on June 20, 1987, the defendant voluntarily came to the Manchester police station, at which time he was arrested as a suspect in the case. A self-developing snapshot was taken of him, and within two-and-a-half hours the picture was used, along with seven IDMO photographs, in an array which the victim viewed. The seven IDMO pictures were prints from 35-millimeter negatives, of which six were from IDMO group 55 and one from IDMO group 67. The traits of the IDMO group 55 are all identical to those of IDMO group 67, with the exception that group 55 subjects are slightly taller than the subjects in group 67. Again, the photographs were displayed so that only the subjects' heads were visible.

After viewing the photographic line-up, the victim identified the defendant. She rated her identification as "a strong 9" on a scale of one to ten. Because it was a successful line-up, the array was preserved.

Prior to trial, the defendant moved to dismiss for the State's failure to preserve potentially exculpatory evidence; to wit, the first array of photographs. Without benefit of Detective Beaudoin's affidavit, later filed by the State, detailing where the photographs in the two arrays came from, the defendant argued that substitution of a recent photograph of him in the second array, without an account of whether the same photographs were used in both arrays, prejudiced him. He asserted that the first photographic array was exculpatory and material as it created reasonable doubt as to the reliability of the victim's identification which would not otherwise exist. After a hearing, the Superior Court (*Dalianis*, J.) denied the motion.

On appeal, the defendant contends that whenever relevant evidence is lost or destroyed, if the prosecution is unable to demon-

strate that it acted in good faith and without culpable negligence, dismissal is the appropriate remedy under part I, article 15 of the State Constitution, without any need for the defendant to show that the evidence was material and its loss prejudicial to the defense. He also asserts that the due process clause of the fourteenth amendment to the Federal Constitution warrants dismissal when potentially exculpatory evidence is lost, if the defense is able to show bad faith. We need not reach the question of whether a defendant is entitled to dismissal of a charge simply where the prosecution fails to demonstrate that it lost or destroyed evidence in good faith, since we find neither bad faith nor culpable negligence here, and since the defendant has not shown that the first array was material.

The defendant has properly preserved both his State and federal claims, *see State v. Fowler*, 132 N.H. 540, 545, 567 A.2d 557, 560 (1989), and we first address the State claim, *see id.*; *see also Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983).

■■ Once a defendant demonstrates that the State has failed to preserve apparently relevant evidence, the State has the burden of showing that it acted in good faith, in the sense that it had no intent to prejudice the defendant, and that it also acted without culpable negligence, *State v. Murray*, 129 N.H. 645, 648, 531 A.2d 323, 325 (1987), which we have defined as "less than gross negligence but more than ordinary negligence," *State v. Reynolds*, 131 N.H. 291, 294, 556 A.2d 298, 299 (1988). If the State carries its burden, to claim relief the defendant must "demonstrate[ ] that the lost evidence was material, to the degree that its introduction would probably have led to a verdict of not guilty, and that its loss prejudiced [the defendant] by precluding the introduction of evidence that would probably have led to a verdict in his favor." *Murray*, 129 N.H. at 648, 531 A.2d at 325.

■ Here the defendant has demonstrated that the State destroyed the initial photographic array by disassembling it and failing to record what pictures comprised the array. Therefore, our examination turns to whether the State's agents, in so doing, had any intent to prejudice the defendant or whether there was culpable negligence. Detective Beaudoin disassembled the array in accordance with departmental policy, which is intended to avoid depletion of the IDMO group stock of photos. The detective's actions, directed by normal police procedure, and the policy supporting the procedure, fail to show any intent to prejudice the defendant. Neither do they show culpable negligence. The department's policy aims to conserve resources where photographs are unsuccessfully utilized in an array. The distinction between successful and unsuccessful arrays is

a reasonable one. Similarly, the detective's failure to record which pictures constituted the array, while perhaps faulty, does not constitute culpable negligence. He recorded the defendant's picture and the victim's failure to identify the defendant. These latter actions were responsibly taken and, overall, his behavior fails to show more than mere negligence.

■ The defendant has not attempted to show that the lost evidence would have led to a not guilty verdict and that its loss precluded the introduction of evidence leading to a verdict favorable to the defense. Having failed to carry his burden, therefore, we find no violation of his rights protected under part I, article 15, and we turn to his federal claim.

■■ "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 109 S. Ct. 333, 334 (1988). Bad faith exists where police conduct indicates that evidence could form a basis for exculpating the defendant. *Id.* at 337. As we explained above, Detective Beaudoin's actions were motivated by a desire to comply with departmental policy and were at most negligent in regard to his failure to record which photographs were in the first array. Similarly, the departmental policy was reasonable and exhibits no intent to prejudice the defense. The defendant has not shown bad faith on the State's part, and we find no federal constitutional violation.

*Affirmed.*

HORTON, J., did not sit; the others concurred.