**STATE of Minnesota, Respondent,**

v.

**Michael Jon SCHMID, Appellant.**

**No. C5–91–2399.**

Court of Appeals of Minnesota.

July 28, 1992.

Review Denied Sept. 15, 1992.

**540** ■

Hubert H. Humphrey III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Brian D. Simonson, Asst. County Atty., Hibbing, for respondent.

John M. Stuart, State Public Defender, Joanne M. Yanish, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by AMUNDSON, P.J., and PARKER and SCHULTZ *, JJ.

## OPINION

PARKER, Judge.

Michael Schmid was charged with criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(a) (1990). Following trial, the jury convicted him of the charge. The trial court sentenced him to 81 months in prison and fined him $500, together with a $50 surcharge.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

On appeal Schmid argues that the trial court erred in declining to grant his motion to dismiss because police officers destroyed a tape containing an interview with the victim. He alleges also that the trial court erred in declining to grant him access to the victim's psychological and psychiatric records. We affirm.

## FACTS

In May 1990, N.H., then 12 years old, met Michael Schmid, then 19. She and Schmid disputed the details of their relationship at trial.

N.H. testified that upon meeting Schmid initially, she told him that she was 16 years old and lived in another town. She testified that later, prior to their first sexual encounter, she indicated to him that she was only 12 years old. She further testified that in July 1990 they began to engage in sexual intercourse and that from July to October 1990, they had sexual intercourse 25 to 30 times.

Schmid testified that he met N.H. in May 1990 and that they were friends and acquaintances. He further testified that, although they discussed having sex, he did not want to get involved because he planned to go to college or into the Air Force.

On October 9, 1990, N.H.'s father called the Hibbing Police Department and charged that his daughter was being sexually active with Schmid. After receiving the report, Officer John Maras met with N.H. and a social worker. Maras testified that the girl told him she had been having sexual intercourse with Schmid.

Later that day, Schmid came to the station and spoke with Officers Maras and Charles Bussey. The testimony of the participants to the ensuing conversation is in conflict. Schmid admitted speaking to the officers, but testified that he denied having sexual intercourse with N.H. Maras and Bussey testified that Schmid admitted to

pursuant to Minn. Const. art. VI, § 2.

them that he had known she was 12 years old and that he had engaged in sexual intercourse with her.

On December 20, 1990, Maras interviewed N.H. at her school after a school counselor, Sylvester (Carmen) Fumia, had contacted him. Fumia and Rebecca Hanegman, a friend of N.H., were present during the interview. Maras taped the conversation and testified that, because of limited secretarial help, he did not have it transcribed. Rather, he summarized the new information that had been obtained and then erased the tape.

Prior to trial, Schmid filed a motion to compel discovery in an attempt to gain access to N.H.'s psychological and psychiatric records. The trial court conducted an in-camera review of the records and refused to release them.

## ISSUES

1. Did the police department's destruction of evidence require dismissal of the charges?

2. Did the trial court err in failing to allow Schmid access to psychological and psychiatric records of the victim?

## DISCUSSION

### I

■ The due process clause of the fourteenth amendment imposes upon the government a duty to deliver exculpatory evidence into "the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2530, 81 L.Ed.2d 413 (1984). The government's constitutional duty to preserve evidence on behalf of criminal defendants is subject to a standard of materiality. *Id.* at 489, 104 S.Ct. at 2534. To meet the standard,

> evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be un-

able to obtain comparable evidence by other reasonably available means.

*Id.* Furthermore,

> unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.

*Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), *reh'g denied*, 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007 (1989).

■ In *State v. Harris*, 407 N.W.2d 456, 460 (Minn.App.1987), *pet. for rev. denied* (Minn. July 31, 1987), this court set forth factors to weigh in determining whether the destruction of evidence warrants reversal of a conviction:

> (1) whether the destruction was intentional; (2) the strength of the state's case even if the evidence was available; and (3) the possible exculpatory value of the lost or destroyed evidence.

*See also State v. Nelson*, 399 N.W.2d 629, 633 (Minn.App.1987) (applying standard and holding that exculpatory value of the evidence was uncertain because no one viewed the tape prior to its destruction), *pet. for rev. denied* (Minn. Apr. 17, 1987); *State v. Edwards*, 380 N.W.2d 503, 508–09 (Minn.App.1986) (applying standard and finding no bad faith on the part of the police and no prejudice to the defendant).

■ Schmid argues that the police officer's destruction of the tape containing the interview with the victim denied his due process right of access to evidence. Although the police in this case exercised poor judgment, we conclude that the destruction of the tape does not require us to set aside the verdict.

■ We caution police that destruction of potentially exculpatory evidence may warrant a setting aside of a verdict and an order for a new trial. That the police believe the evidence has no exculpatory value does not justify its destruction. Police officers, who often investigate a case in its earliest stages, may be unable to foresee the legal theories the prosecution will pursue and therefore are often in a precarious

position to determine whether evidence is potentially exculpatory, particularly as viewed by defense counsel. Moreover, the destruction of material evidence gives rise to a natural inference of prejudice. Usually, destroying evidence eradicates the opportunity to determine its exculpatory value. When the police intentionally destroy evidence, it is a natural inference that it was destroyed because it may have been exculpatory and, hence, prejudice has been caused to defendant.

Officer Maras' destruction of the tape was not justified on a good-faith basis. Apparently, a principal consideration in his decision to destroy the tape was the difficulty of fully transcribing the contents because of a lack of secretarial assistance. While this is presumably true, it did not justify destroying the tape. Officer Maras could simply have kept the tape without transcribing the contents. The cost of saving the tape would have been minimal compared to the attorney fees incurred on appeal of the issue.

Nonetheless, we believe that the inference of prejudice is overcome for two reasons. First, two non-police witnesses, Fumia and Hanegman, were present during the taped interview. Although they were available to corroborate or controvert Maras' summary of the interview, they were not called to testify at trial. Further, the evidence of guilt was very strong in this case. The victim testified that she had had sexual intercourse with Schmid, and police officers testified that Schmid admitted to having intercourse with her. We conclude that the inference of prejudice has been overcome and that we need not order a new trial.

## II

 Schmid further maintains that the trial court erred in declining to grant him access to the victim's psychological and psychiatric records. The state counters that the trial court reviewed all of the relevant records and declined to turn them over to him.

In *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the United States Supreme Court addressed the circumstances under which a criminal defendant may gain access to confidential information. In *Ritchie* the defendant was charged with various sex offenses against his minor daughter and sought access to records at the Children and Youth Services (CYS), a protective service agency that investigated cases of suspected child mistreatment and neglect. *Id.* at 43–44, 107 S.Ct. at 994. The Pennsylvania Supreme Court held that the trial court's failure to allow the defendant to search the files for relevant information violated the confrontation clause of the sixth amendment. *Id.* at 46, 107 S.Ct. at 995.

The United States Supreme Court reversed. The Court held that

Ritchie's interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for in camera review.

*Id.* at 60, 107 S.Ct. at 1002–03. The Court stated:

To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.

*Id.* at 60, 107 S.Ct. at 1003. The Court added that the defendant may not require the trial court "to search through the CYS file without first establishing a basis for his claim that it contains material evidence." *Id.* at 58 n. 15, 107 S.Ct. at 1002 n. 15.

In *State v. Paradee*, 403 N.W.2d 640, 642 (Minn.1987), the Minnesota Supreme Court held that under *Ritchie*, the defendant, who had moved for discovery of county human services and welfare department records, was not entitled to access, but that the trial court was required to examine the records in camera. The court stated that the

in camera approach strikes a fairer balance between the interest of the privilege

holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense. We believe that trial courts, who by training and experience are qualified for the task of determining matters of relevancy, are capable of determining what if any of the information in the records might help in the defense.

*Id.*

In *State v. Hummel*, 483 N.W.2d 68, 72 (Minn.1992), our supreme court recently held that *Ritchie* and *Paradee* do not provide for automatic in-camera examinations but, rather, require the defendant to make some showing as to the relevancy of the confidential material. The court concluded:

> The *Ritchie* Court's analysis, which we adopted in *Paradee*, makes it absolutely clear that *some* showing is required before in camera review is granted. Petitioner made *no* showing to the trial court, which is deficient under any applicable standard. Contrary to petitioner's position, having the trial court review confidential material is not a right. It is a discovery option, but only after certain prerequisites are satisfied. In this case, they were not.

*Id.* (citation omitted) (emphasis in original).

We conclude that the trial court did *more* than necessary with regard to Schmid's request for the confidential records. The court held an in-camera review of the records despite Schmid's failure to make *any* showing of relevancy of the confidential material. We perceive no abuse of the trial court's discretion, as it was exercised in Schmid's favor by the holding of the in-camera review. We defer to the trial court's judgment that the records lacked sufficient relevance for disclosure. We further note that the record did not disclose the existence of other psychological and psychiatric records not within the control of the prosecution. The trial court therefore cannot be said to have abused discretion in failing to order the disclosure of such records.

## DECISION

The natural inference of prejudice arising from the police department's destruction of evidence was overcome by the state's strong evidence of defendant's guilt and by the availability of non-police witnesses who could have testified to the contents of the tape erased by the police officer. The trial court did not err by holding an in-camera hearing and declining to disclose confidential records to the defense, or by declining to order the prosecution to disclose records over which it exercised no control.

Affirmed.