OPINION OF THE COURT
David Goldstein, J.
The issue, apparently one of first impression, is whether the loss of a "rape kit,” either by a hospital or by the police, requires the imposition of a sanction. Under the circumstances of this case, the court finds that imposition of an appropriate sanction is required here.
Defendant stands indicted, inter alia, for rape in the first degree and sexual abuse in the first degree. It is alleged that, *825 on October 18, 1991, defendant, who was known to the complaining witness, forced her into his bedroom where, at gunpoint, he raped and assaulted her. He was arrested on November 5,1991, at the office of his parole officer.
On the date of the incident, complainant was taken to Queens Hospital Center, where a rape kit was prepared. On January 2, 1992, by omnibus motion, defendant requested production and inspection of any physical evidence. The People responded that a "Vitullo Kit was prepared. Upon receipt, the People will provide at the appropriate time”. (Hereinafter the Vitullo Kit will be referred to as the rape kit.)
Inasmuch as no preliminary hearings were requested, the court marked the case ready for trial on February 10, 1992. Between that date and April 16, 1992, defense counsel made numerous attempts to obtain both the rape kit and a laboratory analysis. The People responded that it would be forthcoming. Nevertheless, on April 16, 1992, they announced that the rape kit had been lost and was never submitted to the police laboratory for analysis.
Defendant then moved for either dismissal of the indictment or, in the alternative, preclusion of any medical evidence or an adverse inference charge. A hearing was ordered to determine whether the rape kit was lost by the Hospital or by the Police Department, since determination of the factual issue could have a bearing upon the propriety of imposition of a sanction.
The hearing, which was conducted over a five-month period, included testimony of several police property record officers and Queens Hospital Center personnel. The proof is not in dispute and reflects that a rape kit was prepared by the Queens Hospital Center. On October 19, 1991, the 112th Precinct was notified to pick up the rape kit but, as far as appears, failed to do so. In February 1992, at a management meeting at the Queens Hospital Center, it was discovered that approximately 10 rape kits, including the one pertaining to this case, were still in the Hospital’s custody. This was months after they should have been retrieved by the police. A staff member was assigned to contact the precincts involved to ensure that the kits were removed. Thereafter, between February and March 1992, all of the rape kits except this one were taken into police custody. The Hospital’s log book entries confirm the disposition of those kits. However, the entries concerning this rape kit and the rape kit itself are apparently missing and cannot be located.
*826 The People contend that the Hospital is not an agent of either the Police Department or the District Attorney and, therefore, the loss of the rape kit is not attributable to them. In the alternative, they argue that, since the loss was inadvertent, no sanction should be imposed.
CPL 240.20 (1) (c) provides for discovery of "[a]ny written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial”. While, technically, the rape kit is not a report of a scientific test, had the kit not been lost, a report would have been generated here. As admitted in the People’s response to the demand to produce, it is beyond cavil that defendant was entitled to examine the rape kit. Thus, the issue is whether the kit was in the "possession or control” of the prosecution prior to its disappearance (see, People v Tissois, 72 NY2d 75, 78; People v Reedy, 70 NY2d 826, 827).
The testimony adduced at the hearing demonstrates that, in general, rape kits are prepared by the Hospital at the request of the Police Department. This is evidenced by the fact that the Hospital, after taking various specimens from a victim, does nothing with them except store them until retrieved by the police. No examination or testing is done by Hospital personnel, nor is any diagnosis or treatment regimen made as a result of the contents of the kit. The sole purpose of the kit is to collect evidence for later examination by police personnel. Inasmuch as the rape kit has no medical significance, its only use is as possible evidence. Thus, the function of the Hospital in preparing the kit is plainly one of law enforcement and not diagnosis or treatment.
Accordingly, in my view, especially under the circumstances of this case, in terms of its handling of the rape kit, the Hospital was acting as an agent of the police and, therefore, the prosecution. Upon this basis, it matters not which agency was at fault for the loss of the kit. Thus, it is irrelevant whether the police are to be held accountable for their negligence in failing to retrieve the kit after being informed of its existence, or the Hospital for not notifying the police a second or third time, until almost five months later, coupled with the Hospital’s failure to properly maintain and safeguard critical *827 records. Plainly, both were acting at the behest and on behalf of the prosecution, which ultimately bears the burden of each agency’s negligence.
The second branch of the prosecution’s argument alleges that, if the rape kit was lost through inadvertence, no sanction is warranted. While, on the surface, the case law appears to support the People’s position, scrutiny of the underlying rationale in each of the reported decisions would lead one to a contrary conclusion.
In People v Allgood (70 NY2d 812), a rape kit was routinely destroyed by the police property clerk, in accordance with departmental policy for the disposal of unclaimed investigatory property after a one-year period. Although the defendant had been aware of the kit’s existence for a period of eight months prior to trial, he did not demand its production until the middle of the trial, after he had learned that it had been destroyed. The Court of Appeals held that "defendant forfeited whatever right he had to demand production of the ’rape kit’ and, consequently, he cannot now complain about the People’s failure to preserve it.” (People v Allgood, supra, at 813.)
Likewise, in People v Austin (152 AD2d 590), the rape kit was inadvertently destroyed about two weeks prior to trial. A hearing held during trial revealed that the police property clerk had possession of the kit for approximately one year before its destruction. The trial court found that defendant had been afforded ample opportunity to conduct tests and failed to do so. As a result, it admitted in evidence the People’s scientific evidence relating to the tests and refused to impose an adverse inference as a sanction. In affirming, the Appellate Division, Second Department, held (152 AD2d, at 591): "Under the circumstances, the court did not err in refusing to instruct the jury that it could draw an adverse inference against the People due to the failure to preserve the evidence secured from the complainant”.
In People v Morales (141 AD2d 567, lv denied 72 NY2d 922), the rape kit was not preserved since the specimen from the complainant had decomposed. As a result, no scientific tests could have been conducted by defendant. Approximately eight months prior to trial, the People’s voluntary disclosure form advised that a rape kit was available for inspection and testing. Up until the trial, however, defendant never sought the production of the kit, nor did he exhibit any interest in conducting independent tests. Moreover, he failed to request *828 an adverse inference charge. In affirming, the Appellate Division, Second Department, relied upon Allgood (supra) holding that defendant’s claim was "without merit.”
In People v Hernandez (138 AD2d 627), defendant was observed selling what was later discovered to be heroin. A purchaser was arrested after receiving a red object from defendant. The object, a packet containing heroin, was destroyed upon the discontinuance of the case against the purchaser. Defendant never sought to examine the evidence until after he learned of its destruction. In affirming his conviction for criminal sale of a controlled substance, the Appellate Division, Second Department, held (138 AD2d, at 628): "We additionally note that the defendant never sought the production of this evidence prior to trial; rather, it was only when it came to his attention that the evidence had been destroyed that he expressed an interest in examining it.” In reliance upon Allgood (supra), the Court held that defendant had forfeited whatever right he may have had to demand production and could not be heard to complain as to the People’s failure to preserve the evidence.
As is readily apparent, in these and other cases, the evidence was fully available to defendant, who chose to wait until the very eve of trial, or during trial, to demand production. Under such circumstances, it is reasonable to conclude that a defendant forfeited any right he may have had to such disclosure. In our case, however, the rape kit has never been made available to the defendant. This is a critical distinction between the factual situation in the cited cases and that in this case. Here, defense counsel timely requested production and the People promptly agreed to this request. Over several adjournments, defense counsel repeatedly put the prosecution on notice that he was interested in the People’s test results and, in addition, wanted the rape kit to be examined by his own experts. Defendant did not in any manner delay the proceeding, nor did he act so as to cause the rape kit to be lost or destroyed. Just the opposite, it was only as a result of defense counsel’s continual haranguing which prompted the prosecutor to investigate in an attempt to locate the rape kit. Under these circumstances, it is clear that defendant has not forfeited any right. He timely and repeatedly sought disclosure and, upon the People’s failure to comply, may properly request that sanctions be imposed (CPL 240.70 [1]).
In fashioning an appropriate response to the prosecution’s *829 failure to preserve evidence, the Court of Appeals has held that "the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society.” (People v Kelly, 62 NY2d 516, 520; see also, People v Haupt, 71 NY2d 929, 931.) In Kelly, defendant removed a wallet and several bills from a decoy officer. The wallet and cash were vouchered but, pursuant to police department practice, were immediately returned to the decoy officer. This was a violation of Penal Law § 450.10, which prohibits the return of such property without a court order. In reversing the dismissal of the information, the Court of Appeals held (62 NY2d, at 521): "Although the choice of 'appropriate’ action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of evidence.”
In our case, since the loss was not intentional, nor had any testing been done on the rape kit, any order precluding any testimony concerning the kit would be meaningless. Under the circumstances, it would be more appropriate to permit testimony that a rape kit was prepared, was never examined and was lost and to charge the jury that it may, if it wishes, draw an adverse inference as a result of the People’s failure to test, maintain and preserve the rape kit. In my view, this limited sanction appears to be both fair and equitable to both sides under the unique circumstances of this case.
Naturally, the sanction shall be imposed only if the rape kit is relevant to the issues at trial. Thus, should defendant admit having had sexual intercourse with the complainant on the date of the alleged incident, any evidence that might have been derived from testing the kit would be irrelevant. In such case, there should be no adverse inference. On the other hand, should defendant deny having had intercourse, an adverse inference charge would be appropriate since the information which would have been gleaned from the examination and tests of the kit would have a direct bearing upon the underlying issues of rape and sexual abuse. Upon this basis, final resolution of this matter, relating to an adverse inference instruction as a sanction, is dependent upon the nature of the proof to be adduced at trial and, thus, is best reserved to the trial court.