STATE of North Dakota, Plaintiff and Appellee,

v.

Duane Allen STEFFES, Defendant and Appellant.

Crim. No. 920336.

Supreme Court of North Dakota.

May 26, 1993.

Richard J. Riha, Asst. State's Atty., Bismarck, for plaintiff and appellee.

Irvin B. Nodland (argued) and Thomas A. Dickson (on brief) of Nodland & Dickson, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Duane Allen Steffes appealed from a criminal judgment of conviction based upon the verdict of a jury which found him guilty of driving a motor vehicle while un-

der the influence of alcohol pursuant to section 39–08–01, NDCC. We affirm.

In the early morning hours of March 7, 1992, Sergeant Jerry Seeklander of the North Dakota Highway Patrol stopped Steffes after observing him driving a motor vehicle in an erratic manner. While requesting Steffes to produce his driver's license and proof of insurance, Sergeant Seeklander noticed that Steffes's eyes were bloodshot and his speech was slurred, and that an odor of an alcoholic beverage emanated from the vehicle. Inside the vehicle was an open bottle of Schnapps and a spilled bottle of beer.

Sergeant Seeklander asked Steffes to accompany him to his patrol car where a number of verbal tests were administered, such as an alphabet recitation exercise and a counting exercise. Sergeant Seeklander taped Steffes's performance of the tests on the patrol car's audio tape recorder.

Following the verbal tests, Sergeant Seeklander asked Steffes to step out of the patrol car and perform a number of coordination tests, such as the walk-and-turn exercise, the one-leg stand exercise, and the finger-to-the-nose exercise. As a result of Steffes's performance of these tests and Sergeant Seeklander's other observations, Seeklander placed Steffes under arrest for driving while under the influence of alcohol. A blood test was administered which indicated a blood alcohol concentration reading of 0.16%.

■ On March 16, 1992, Steffes filed a Rule 16, NDRCrimP, discovery request with the trial court and served a copy upon the State. The broad discovery request sought material similar to the audio-taped

conversation between Sergeant Seeklander and Steffes.[1] The State responded to the request, stating that their files relating to the case would be open for Steffes's examination.

On April 10, 1992, an administrative hearing was held at the Department of Transportation. The evidence taken at the arrest scene—the bottle of Schnapps, the bottle of beer, and the audio-taped conversation in the patrol car—were all available to Steffes. The administrative hearing is not the subject of this appeal.

Sometime in June or July 1992, Sergeant Seeklander recorded over the audio tape, thus destroying the March 7, 1992 taped recording of Steffes's performance of the verbal tests.

■ A few weeks before the trial, Steffes learned from Sergeant Seeklander that the audio tape may have been recorded over or erased. On the night of August 24, 1992, the day before the trial, Steffes learned that the audio tape had in fact been obliterated. On the day of the trial, August 25, 1992, Steffes attempted to include an instruction to the jury which dealt with the issue of the destroyed audio tape. The proposed instruction read:

## "FAILURE TO PRODUCE EVIDENCE

The state has the duty to preserve all relevant evidence. If the state has failed to offer evidence under their control and the evidence was not equally available to the defendant, you may infer that the evidence would be unfavorable to the state.

NDJI—CIVIL 1625 (modified)"[2]

---

1. The criminal discovery process in North Dakota is an informal one in which a demand is made upon the prosecutor's office, and the discoverable evidence is released to the defense. The discovery demand is a part of the record in the present case and demonstrates that the defense requested, "[a]ny and all statements of the defendant, including but not limited to, any and all written and recorded statements of the defendant...." Defense also requested notification if any of the material sought came into possession of the prosecution at a later time. Under the informal discovery procedure here employed, the defense was entitled to the audio recording of Steffes's performance of the verbal

tests. Rule 16, N.D.R.Crim.P. *See also, People v. McManis,* 26 Cal.App.3d 608, 102 Cal.Rptr. 889 (1972).

2. The requested instruction varied significantly from the pattern jury instruction and did not include that part of the instruction which permitted the unfavorable inference if "no reasonable explanation for that failure is given." *See* NDJI–CIVIL 1625. Further, the propriety of an instruction depends on the character of the case. We have held that civil instructions may be appropriate in criminal cases, *State v. Lang,* 463 N.W.2d 648 (N.D.1990), and may even be

The trial court refused to give the instruction.

During the jury selection process for Steffes's trial, the State exercised three of its four peremptory challenges. The three challenges were against male members of the jury panel. Steffes exercised all four of his peremptory challenges, first striking three male members of the jury panel, and then striking one female member. At no time did Steffes challenge the State's use of the peremptory challenges. The trial was held before a jury panel of five women and one man.

Steffes was charged with driving while under the influence of alcohol, and the *per se* offense of driving with a blood alcohol concentration greater than .10%. NDCC § 39–08–01. The jury returned with a verdict finding that he had driven a vehicle while under the influence of alcohol, but made no finding that he had driven with a blood alcohol concentration greater than .10%.

Steffes raises two issues on appeal: (1) The trial court failed to properly instruct the jury regarding the destruction of the audio tapes; and (2) The prosecution's gender-based peremptory challenges denied him equal protection of the law.

 Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. McIntyre,* 488 N.W.2d 612 (N.D.1992); *State v. Mounts,* 484 N.W.2d 843 (N.D.1992). In a criminal case, a defendant is entitled to a jury instruction on a valid applicable theory, but only if there is some evidence to support it. Rule 30, N.D.R.Crim.P.; *State v. Cummins,* 347 N.W.2d 571 (N.D.1984); *State v. Gann,* 244 N.W.2d 746 (N.D.1976). On appeal, jury instructions are fully reviewable and must be viewed as a whole; and when so considered, if they correctly advise the jury as to the law, their inclusion or exclusion is sufficient. *City of Minot v. Rubbelke,* 456 N.W.2d 511 (N.D.1990); *State v. Haakenson,* 213 N.W.2d 394 (N.D.1973).

Steffes argues that the critical evidence on the issue of his driving while under the influence of alcohol was Sergeant Seeklander's testimony on the field sobriety tests. By alleging that the audio tapes would prove that he was not under the influence of alcohol, he needed to play the audio tapes to the jury to rebut Seeklander's testimony. Absent the playing of the audio tape, Steffes claimed an entitlement to receive a jury instruction regarding the evidentiary weight to be given in the absence of the "crucial evidence." The theory upon which Steffes based his proposed instruction was that, in the absence of the instruction, he would not receive a fair trial and his due process rights under the United States Constitution would be violated.[3]

required in some instances, *State v. Janda,* 397 N.W.2d 59 (N.D.1986).

**3.** Steffes does not brief the application of the North Dakota Constitution to this case. Relying upon state constitutional law, some states hold that even in situations where defendants cannot show bad faith on the part of the state in failing to preserve material evidence, defendants may nonetheless be entitled to an adverse-inference instruction, dismissal, or new trial if they can make a sufficient showing of substantial prejudice. These states take authority from Justice Stevens's concurring opinion in *Arizona v. Youngblood* wherein he wrote: "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." *Arizona v. Youngblood,* 488 U.S. 51, 61, 109 S.Ct. 333, 339, 102 L.Ed.2d 281, 291 (1988) [Stevens, J. concurring].

Fairness and an aversion to prejudice have prompted these states to look to their state constitutions to build upon, further expand, or limit the *Arizona v. Youngblood* test to encompass an "unfair prejudice" prong—either in addition to or at the expense of the bad faith prong. These jurisdictions hold that when the state loses or destroys evidence, the state is subjected to a higher due process standard under their state constitutions than the bad faith test as stated in *Arizona v. Youngblood. See, e.g., Lolly v. State,* 611 A.2d 956 (Del.1992); *State v. Riggs,* 114 N.M. 358, 838 P.2d 975 (1992); *State v. Schmid,* 487 N.W.2d 539 (Minn.Ct.App.1992); *Commonwealth v. Henderson,* 411 Mass. 309, 582 N.E.2d 496 (1991); *State v. Matafeo,* 71 Haw. 183, 787 P.2d 671 (1990); *State v. Smagula,* 133 N.H. 600, 578 A.2d 1215 (1990); *Spaulding v. State,* 195 Ga.App. 420, 394 S.E.2d 111 (1990) *Thorne v. Department of Public Safety,* 774 P.2d 1326 (Alaska 1989); *State v. Fain,* 116 Idaho 82, 774 P.2d 252 (1989). *See also, State v. Youngblood,* 173 Ariz. 502, 844 P.2d 1152 (1993) [Feldman,

Therefore, we must determine if there was sufficient evidence presented to support such a claim, and if so, whether the denial of the instruction adequately informed the jury as to the applicable law. *Rubbelke, supra; Cummins, supra.*[4]

Rule 16, N.D.R.Crim.P., governs criminal discovery. *State v. Rasmussen,* 365 N.W.2d 481 (N.D.1985). It is a reciprocal discovery rule that lists the prosecutor's and defendant's duties and obligations when engaging in discovery. The prosecutor has a duty to preserve evidence that is material and favorable to the defendant. Rule 16(a)(1), N.D.R.Crim.P. A prosecutor's failure to do so may be held to violate the defendant's constitutional right to due process and a fair trial. Rule 16(d)(2), N.D.R.Crim.P.

Courts throughout this country have attempted to analyze an accused's right to due process when prosecutors fail to provide evidence to the defense which is within, or potentially within, their purview. A summation of these cases reveals that the conduct of the state which has resulted in the loss of evidence can be grouped into three general categories: (1) the state's failure to collect evidence in the first instance, (2) the state's failure to preserve evidence once it has been collected, and (3) the state's suppression of evidence which has been collected and preserved. *See State v. Brosnan,* 24 Conn.App. 473, 589 A.2d 1234 (1991); *State v. Gerhardt,* 161 Ariz. 410, 778 P.2d 1306 (Ct.App.1989); *State v. Trumble,* 113 Idaho 835, 748 P.2d 826 (Ct.App.1987).

At one end of the evidentiary spectrum is the situation where the state initially fails to collect evidence. Police generally have no duty to collect evidence for the defense. We have held, for example, that the state is required neither to make a sample of defendant's breath available for independent intoxication testing, *State v. Larson,* 313 N.W.2d 750 (N.D. 1981), nor to inform defendants that they may have an additional intoxication test performed at their own expense. *State v. Rambousek,* 358 N.W.2d 223 (N.D.1984). Similarly, absent statutory requirement, police have no duty to tape-record a defendant's interrogation. *State v. Gordon,* 261 N.J.Super. 462, 619 A.2d 259 (Ct.App.Div. 1993); *People v. Wimberly,* 5 Cal.App.4th 773, 7 Cal.Rptr.2d 152 (1992); *Holder v. State,* 571 N.E.2d 1250 (Ind.1991); *State v. Havatone,* 769 P.2d 1043 (Ariz.Ct.App. 1989); *cf. Stephan v. State,* 711 P.2d 1156 (Alaska 1985).

At the other end of the evidentiary spectrum is the situation where the state collects and preserves evidence, but withholds that evidence when the defendant requests it, or when it otherwise becomes material to the defense. In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state withheld a crucial extrajudicial statement made by the defendant, despite defense counsel's request for the statement. The Court held that, "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.,* at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. *Accord State v. Anderson,* 336 N.W.2d 123 (N.D.1983); *State v. Hilling,* 219 N.W.2d 164 (N.D.1974). Steffes's case is not factu-

C.J. concurring and dissenting]. *Contra People v. Cooper,* 53 Cal.3d 771, 281 Cal.Rptr. 90, 809 P.2d 865 (1991) [adopting *Arizona v. Youngblood* bad faith standard as a matter of state constitutional law].

Because Steffes did not brief this issue under our State Constitution, we will not consider it further. *See Friedt v. Moseanko,* 484 N.W.2d 861 (N.D.1992); *Lund v. North Dakota State Highway Dept.,* 403 N.W.2d 25 (N.D.1987); *State v. Patzer,* 382 N.W.2d 631 (N.D.1986).

**4.** The instruction as proffered by Steffes is based upon North Dakota Jury Instruction (Civil) No. 1625. It is also similar to the instruction

as approved by Justice Stevens in his concurring opinion in *Arizona v. Youngblood,* which provided in part:

"If you find that the State has … allowed to be destroyed or lost any evidence whose content or quality are in issue, you may infer that the true fact is against the State's interest."

*Arizona v. Youngblood,* 488 U.S. 51, 59–60, 109 S.Ct. 333, 338, 102 L.Ed.2d 281, 290 (1988). Although the majority opinion in *Arizona v. Youngblood* did not characterize the giving of the aforementioned instruction as dispositive, Steffes claims that by refusing it, the trial court violated his due process rights.

ally analogous to *Brady* in that in the present case, the evidence was not suppressed, but destroyed. Cases such as *Brady* and its progeny, *e.g., Anderson, supra,* and *Hilling, supra,* in which the issue centers around the state's suppression of evidence are distinguishable and not precedential to Steffes's case. *See State v. Youngblood,* 173 Ariz. 502, 844 P.2d 1152 (1993) [Feldman, C.J. concurring and dissenting]; *Brosnan, supra.*

■ The third type of conduct, which lies somewhere between a failure to collect evidence and the suppression of evidence collected and preserved, involves the failure to preserve evidence which has been collected. The state's conduct in the present case is in this category. Therefore, we review decisions in which the law regarding preservation, not suppression, of evidence has been set forth.

The facts in the present case are somewhat analogous to those in *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), in which the state failed to properly preserve clothing and semen samples in a molestation case. As a result, the criminal pathologist was unable to properly test the clothing and semen. The state did not attempt to make use of the materials in its own case in chief. On appeal from the conviction, Youngblood contended that the state had breached its duty to preserve evidence which could prove useful to him in his defense, thus denying him due process under the law.

In stark contrast to *Brady,* the unpreserved evidence in *Arizona v. Youngblood* was neither plainly exculpatory nor inculpatory. Under these circumstances, there is no prejudice in fact because it is speculative whether the evidence *might* have been exculpatory, or *might* have been inculpatory. *See City of Bismarck v. Bauer,* 409 N.W.2d 90 (N.D.1987).

Recognizing this distinction, the Supreme Court rejected the application of the fundamental-fairness requirement of the Due Process Clause which would impose on police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.,* 488 U.S. at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289. Instead, the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* For this type of evidence, good or bad faith of the police is relevant because of an inference that can be drawn from the bad faith of the police. In a *Brady* setting, however, good faith is immaterial because, by definition, *Brady* materials are plainly exculpatory and no inference is required. As a result, one of the threshold questions in the *Arizona v. Youngblood* test requires that if Steffes is to prove a due process violation, he must show that the tape recording was destroyed in bad faith.

■ Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense. *State v. Baldwin,* 224 Conn. 347, 618 A.2d 513 (1993). *Cf.,* NDCC § 1-01-21 [defining good faith].

In the present case, Sergeant Seeklander was asked with regard to his erasing the audio tape:

"Q. When was the—you said you recorded over the tape. When was that done?

"A. Would have been done last part of June, first part of July.

"Q. Why was it done?

"A. I guess a couple reasons. I need a fresh tape and this case was back in March. I had assumed it was over and done with."

■ Whether Seeklander's action could be termed reckless, intentional, negligent, or merely that of following or failing to follow regular police procedure, is open to question.[5] But, our research shows that

---

5. We are not impressed with the State's procedure for safeguarding audio tapes which may

the evidentiary standard necessary to prove bad faith by the state with regard to the destruction or loss of evidence is quite high.

The Supreme Court of Connecticut decided a conceptually similar case earlier this year. In *State v. Baldwin*, 224 Conn. 347, 618 A.2d 513 (1993), the defendants were convicted for the sale of cocaine. The police officers seized vials of cocaine found on one of the defendants, and had the vials tested by the state toxicologist. All the vials tested positive for cocaine. The contents of the vials, however, had been destroyed by the Division of Consumer Protection with permission from the police department because the underlying prosecutions of the defendants had been resolved, and it was mistakenly believed the retention of the cocaine was no longer necessary. Both the trial court and the supreme court held that destruction based on the belief that the evidence was not needed, or would not be further needed, was not bad faith. *Accord, State v. Morales*, 844 S.W.2d 885 (Tex.Ct.App.1992) [audio tape reused in accordance with normal procedure, not knowing exculpatory value of the tape and believing that case would be dismissed, is not bad faith]; *State v. Williamson*, 212 Conn. 6, 562 A.2d 470 (1989) [deliberate destruction of evidence with reckless disregard for the defendant's rights is not enough to establish bad faith]. *See also, People v. Johnson*, 197 Mich.App. 362, 494 N.W.2d 873 (1992) [routine destruction of taped police broadcasts where the purpose is not to destroy evidence does not mandate

a reversal]; *State v. Dulaney*, 493 N.W.2d 787 (Iowa 1992) [blood sample destroyed according to normal procedure after a set time interval not bad faith]; *State v. Hulbert*, 481 N.W.2d 329 (Iowa 1992) [negligent, as opposed to intentional, erasing of audio tape does not warrant adverse-inference instruction]; *Barre v. State*, 826 S.W.2d 722 (Tex.Ct.App.1992) [audio tape recorded over according to the normal practice of police not bad faith]; *People v. Jackson*, 172 A.D.2d 935, 568 N.Y.S.2d 215 (1991) [accidental or inadvertent erasing not bad faith]; *Spaulding v. State*, 394 S.E.2d 111 (Ga.Ct.App.1990) [normal erasing of video tapes after a certain period of time is not bad faith]. *Cf. Bauer, supra* [based on United States and North Dakota Constitution, no due process violation was found when police inadvertently erased videotape of defendant's performance of physical tests; Court utilized *Brady* test as the case was heard before the issuance of the *Arizona v. Youngblood* test].

██ There is no evidence that Seeklander's erasing of Steffes's audio-taped conversation was done in bad faith. He erased the tape under the belief that the case had been dealt with and that the tape would not be further needed, not with the intent of thwarting the defense. With no bad faith on the part of the state, this case does not implicate the *Arizona v. Youngblood* due process violation test. Because there is no evidence to support a theory of a due process violation, Steffes was not entitled to the jury instruction. *See Cummins supra; Gann, supra.*[6]

play a part in a subsequent action. It is the State's duty to zealously protect evidence in its possession. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). That the State believes the evidence has no value does not justify its destruction when doing so may prejudice the accused. The haphazard handling and destruction of evidence, which actions are potentially prejudicial to the accused, may warrant different rules if destruction of evidence is commonplace.

**6.** Even if Steffes had made the requisite showing—which he did not—that the audio tape was destroyed in bad faith, it does not follow that he necessarily would have been entitled to the ad-

verse-inference instruction. In North Dakota, there is no general authority regarding the propriety of giving an adverse-inference instruction to a jury in a criminal case.

Other states have dealt with this issue, holding that courts enjoy a large measure of discretion in determining the appropriate sanction that should be imposed because of the destruction of discoverable evidence; and whether the sanction of an adverse-inference instruction would be appropriate is a matter within the sound discretion of the trial court. *People v. Morton*, 189 A.D.2d 488, 596 N.Y.S.2d 783 (N.Y.App.Div. 1993); *People v. Miller*, —— Misc.2d ——, 594 N.Y.S.2d 978 (N.Y.Sup.Ct.Crim.Term 1993); *People v. Von Villas*, 10 Cal.App.4th 201, 13 Cal.Rptr.2d 62 (1992); *People v. Wimberly*, 5

 Steffes also alleges that his equal protection rights were denied in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by the prosecution's gender-based peremptory challenges exercised against male jury panel members. However, the first time Steffes had alleged that his equal protection rights had been violated was in his brief to this Court. We decline to consider this issue. Issues not presented to the trial court cannot be considered for the first time on appeal. *City of West Fargo v. Maring*, 458 N.W.2d 318 (N.D.1990).

The judgment of the trial court is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

I join in the opinion for the court by Chief Justice VandeWalle. I write separately only to point out that, in a proper case, either the prosecution or defense in a criminal trial would be entitled to a correct jury instruction, similar to NDJI–Civil 1625, on an adverse inference against the party that fails to produce or destroys evidence under his control, if no satisfactory explanation for that failure is given. *See* 29 AmJur2d *Evidence* §§ 178, 179 (1967); Charles E. Torcia, *Wharton's Criminal Evidence*, § 146 (13th ed. 1972); 2 Wigmore, *Evidence* §§ 290, 291 (Chadbourn rev. 1979). A party is entitled to a jury instruction if there is evidence to support it. *State v. Thiel*, 411 N.W.2d 66 (N.D. 1987).

Cal.App.4th 773, 7 Cal.Rptr.2d 152 (1992). If there is no evidence of bad faith, the sanction imposed by the trial court should be no more than is necessary to assure the defendant a fair trial. *Von Villas, supra.*