■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL SMITH, Appellant. [599 NYS2d 582] —Judgment of the Supreme Court, Bronx County (Ivan Warner, J.), rendered February 13, 1992, convicting the defendant, after a jury trial, of robbery in the second degree (Penal Law § 160.10 [1]), criminal possession of stolen property in the fifth degree (Penal Law § 165.40), and menacing in the third degree (Penal Law § 120.15), and sentencing him to concurrent prison terms respectively of 10 years to life, 1 year, and 3 months, unanimously reversed, on the law, and the matter remanded for a new trial.

The relevant facts are fully set forth in this Court's recent decision reversing the conviction of the defendant's codefendant, Mark Morton *(People v Morton,* 189 AD2d 488). Among the several grounds individually found to require the reversal of Morton's conviction was the trial court's ruling forbidding the defendants from being present during the jury's viewing of the crime scene. That ground for reversal is raised by the appellant as well and cannot be disposed of differently. The result of the trial court's ruling was to deprive appellant, no less than his codefendant, of his statutorily guaranteed right to be present at the viewing (CPL 270.50 [2]) which, of course, is but a specifically articulated component of the more general statutory guarantee of a defendant's right to be personally present during the trial of the indictment (CPL 260.20; *see, People v Morton, supra,* at 494). As the error affected the mode of the proceedings it would have been addressable as a matter of law even if it had not been preserved by objection *(supra,* at 494, citing *People v Mehmedi,* 69 NY2d 759). And, as it caused the appellant to be excluded from a material stage of his trial,

harmless error analysis is inappropriate *(supra,* at 494, 495, citing *People v Mehmedi, supra,* at 760).

Also necessitating the reversal of appellant's conviction, was the trial court's ruling preventing appellant from presenting evidence both relevant and material to his defense. As noted more fully in this Court's decision respecting the appeal of appellant's codefendant, the People's evidence at trial indicated that the defendants had entered the complainant's apartment by leaping or jumping through the top part of a bedroom window and that they were subsequently pursued by the police from the crime scene. It was the testimony of one of the pursuing officers that, while attempting to elude capture, the appellant dropped to the ground from a fire escape ladder suspended some 12 feet above street level and thereafter continued his flight, rapidly scaling two sets of stairs and a chain link fence prior to his apprehension. As indicated by his offer of proof, the appellant was prepared to present evidence showing that he suffered from a disabling hip condition for which he had been medically treated from 1986 until the time of the incident giving rise to the within prosecution; hospital records the appellant would have offered in evidence had he been permitted to do so, confirmed that the appellant's hip condition had necessitated surgical intervention in 1986 and subsequent intermittent hospital care until at least the time of the break-in at the complainant's apartment. It was the appellant's contention that these records, together with the testimony of either a board certified orthopedic surgeon who had examined appellant or appellant's treating physician, would establish that appellant was physically incapable of the various athletically strenuous maneuvers he was said to have performed while attempting to avoid capture, or, in other words, that he could not have been one of the men pursued by the police from the scene of the crime. Plainly, the proffered evidence was highly relevant and, indeed, crucial to the appellant's defense of misidentification *(see, People v Steinberg,* 170 AD2d 50, 75, *affd* 79 NY2d 673). The trial court's refusal to permit the introduction of this evidence was insupportable on evidentiary grounds and constituted an abridgment of the appellant's fundamental right to present evidence and call witnesses in his defense *(see, Chambers v Mississippi,* 410 US 284, 294, 302; *In re Oliver,* 333 US 257, 273; *People v Foy,* 32 NY2d 473, 478; *People v Cuevas,* 67 AD2d 219, 226). It would be difficult to deem the error, which was of constitutional magnitude, harmless even if the identification issue had not been closely contested *(see, People v Crimmins,* 36 NY2d 230,

237). As it was, however, with the complainant failing to identify the appellant at trial, and the only other testimony in which the appellant was identified as a perpetrator having been admitted without the requisite foundation, the exclusion of the evidence would not be possible to view as benign even under the less exacting harmless error standard applicable where no error of constitutional dimension is involved *(see, supra,* at 238-242).

In view of the fact that this matter will be retried, it is appropriate to note that, in addition to the aforementioned grounds for reversal, the appellant's trial was affected by other serious errors which, had they been preserved at trial and argued on appeal, would also have mandated reversal. Among these was the trial court's failure to impose any sanction for the People's failure to abide by their disclosure obligations under *People v Rosario* (9 NY2d 286, *cert denied* 368 US 866), one of the errors upon which the reversal of the conviction of the defendant's codefendant was predicated *(People v Morton, supra);* and the court's admission, over objection by appellant's trial counsel, of police testimony confirming an out-of-court identification of the appellant by the complainant, testimony for which the necessary foundation, i.e., that the witness is unable to identify the defendant on the basis of present recollection, was never supplied *(People v Morton, supra,* at 495, citing *People v Quevas,* 81 NY2d 41). Concur— Murphy, P. J., Milonas, Wallach and Kassal, JJ.